
telephone at (202) 833–9339, fax at (202) 833–9434, or website at *http:// www.rtca.org.*

**SUPPLEMENTARY INFORMATION:** Pursuant to section 10(a) (2) of the Federal Advisory Committee Act (Pub. L. 92–463, 5 U.S.C., App.), notice is hereby given for a meeting of the Thirty Ninth RTCA SC–216 Aeronautical Systems Security Plenary.

The agenda will include the following:

1. Welcome and Administrative Remarks
2. Introductions
3. Agenda Review
4. Meeting-Minutes Review
5. Review Joint Action List
6. Review/Resolution of DO–356A/ED–203A Final Review and Comment(Frac)/Open Consultation Comments
7. Decision to Approve Release of DO–356A/Ed–203A for Presentation to Program Management Committee/ Council for Publication
8. Schedule Update
9. Potential Future Joint Activities
10. Date, Place and Time of Next Meeting
11. New Business
12. Adjourn Plenary

Attendance is open to the interested public but limited to space availability. With the approval of the chairman, members of the public may present oral statements at the meeting. Persons wishing to present statements or obtain information should contact the person listed in the **FOR FURTHER INFORMATION CONTACT** section. Members of the public may present a written statement to the committee at any time.

Issued in Washington, DC on March 13, 2018.

**Michelle Swearingen,**
*Systems and Equipment Standards Branch, AIR–6B0, Policy and Innovation Division, AIR–600, Federal Aviation Administration.*
[FR Doc. 2018–05344 Filed 3–15–18; 8:45 am]
**BILLING CODE 4910–13–P**

---

# DEPARTMENT OF TRANSPORTATION

## Federal Highway Administration

### Notice of Intent To Prepare Environmental Impact Statement, I–495 & I–270 Managed Lanes Study, Montgomery and Prince George's Counties, Maryland and Fairfax County, Virginia

**AGENCY:** Maryland Department of Transportation State Highway Administration (MDOT SHA), Federal Highway Administration (FHWA), Department of Transportation (DOT).

**ACTION:** Notice of intent to prepare an Environmental Impact Statement (EIS).

**SUMMARY:** The FHWA, as the Lead Federal Agency, and MDOT SHA, as the Local Project Sponsor, are issuing this notice to advise the public of our intention to prepare an EIS for the I–495 & I–270 Managed Lanes Study (Study). The Study is the first element of a broader Traffic Relief Plan as announced by Governor Larry Hogan in September 2017, which considers improvements along the entire length of I–495 (Capital Beltway), as well as the entire length of I–270 (Dwight D. Eisenhower Memorial Highway) up to I–70 in Frederick County, Maryland. This EIS will evaluate the potential environmental impacts of alternatives that address congestion within the specific Study scope of I–495 from south of the American Legion Bridge in Fairfax County, Virginia to east of the Woodrow Wilson Bridge and on I–270 from I–495 to I–370, including the east and west I–270 spurs in Montgomery and Prince George's Counties, Maryland. The EIS will be prepared in accordance with regulations implementing the National Environmental Policy Act (NEPA) and provisions of the Fixing America's Surface Transportation (FAST) Act and will include a range of reasonable alternatives, including a "No Build" alternative.

**FOR FURTHER INFORMATION CONTACT:**
Jeanette Mar, Environmental Program Manager, Federal Highway Administration, Maryland Division, George H. Fallon Federal Building 31 Hopkins Plaza, Suite 1520, Baltimore MD 21201, (410) 779–7152, or email at *jeanette.mar@dot.gov.* Lisa B. Choplin, Project Director, I–495 & I–270 P3 Project Office, Maryland Department of Transportation State Highway Administration, 707 North Calvert Street, Baltimore, MD 21202, (833) 858–5960, or email at *495-270-P3@ sha.state.md.us.*

**SUPPLEMENTARY INFORMATION:** The purpose of this notice is to: (1) Alert interested parties to the FHWA and MDOT SHA plan to prepare the EIS; (2) provide information on the nature of the proposed action; (3) solicit public and agency input regarding the scope of the EIS, including the purpose and need, alternatives to be considered, and impacts to be evaluated; and (4) announce that public and agency scoping meetings will be conducted.

The Study limits extend to areas in Montgomery and Prince George's counties, Maryland along I–495 (Capital Beltway) from south of the American

Legion Bridge in Fairfax County, Virginia, to east of the Woodrow Wilson Bridge and on I–270 (Dwight D. Eisenhower Memorial Highway) from I–495 to I–370 including the east and west I–270 spurs.

At the present time, high travel demand from commuter, business, and recreational trips results in severe congestion nearly 10 hours a day in the Study corridors. Travelers place a high value on reaching their destinations in a timely manner, and in recent years, the Study corridors have become so unreliable that uncertain travel times are experienced daily. Managed lanes are needed to provide more dependable travel times and congestion relief. Motorists on I–495 and I–270 do not have an option for efficient travel during extensive periods of congestion. Additional roadway management options are needed to improve travel choices.

Additional capacity and improvements to enhance reliability must be financially viable. MDOT's traditional funding sources would be unable to effectively finance, construct, operate, and maintain highway systems of this magnitude. A revenue source that provides necessary funding, such as tolling options, is needed to provide additional capacity and improvements addressing existing and anticipated high travel demand. A Public-Private Partnership (P3) with the state will be pursued to develop innovative approaches to design, build, finance, operate, and maintain the potential improvements developed through the NEPA Study.

The intent of the proposed action to be assessed in the Study is to accommodate existing traffic and long-term traffic growth, enhance trip reliability, and provide an additional roadway travel choice. Additional roadway options would also accommodate homeland security needs and improve the movement of goods and services throughout the Study corridor. The EIS will include a review of existing and future traffic, existing roadway infrastructure, and existing environmental conditions to establish context for the identification of alternatives and assessment of potential impacts. The analyses undertaken during the EIS will result in identification of the alternative that best meets the Study purpose and need while considering the environmental impacts of that alternative. The alternatives evaluated in the EIS will include build alternatives which provide additional capacity and offer travel choices for travelers on I–495 and I–270. The "No Build" alternative will

be carried forward for baseline comparison purposes throughout the EIS development process.

The EIS will be prepared by MDOT SHA for FHWA to fulfill the requirements established in NEPA pursuant to current FHWA regulations and guidance. MDOT SHA intends to recommend a preferred alternative in the Draft EIS. The FHWA may issue a single Final EIS and Record of Decision (Final EIS/ROD), unless FHWA determines statutory criteria or consideration precluding issuance of a combined decision document.

Previous analyses which evaluated managed lanes in the Study corridors will be considered and incorporated by reference, as appropriate. The Study will consider relevant resource identification and field investigations from previous studies. To the extent consistent with FHWA NEPA regulations, conclusions reached as part of previous planning studies could inform the initial range of alternatives and focus the alternatives evaluation. Since 1990, several studies have examined various sections of I–495 and I–270 within the current Study limits in an effort to evaluate potential congestion relief and operational improvements. Among other issues, these studies considered the potential to provide additional capacity along I–495 and I–270 that could connect with adjacent transportation facilities. Recommendations resulting from each of these studies included the implementation of managed lanes (including Express Toll Lanes [ETL], High-Occupancy Vehicle [HOV] lanes, and High-Occupancy Toll [HOT] lanes) on I–495 and radial facilities, (*i.e.*, I–270 and I–95). Studies have included: the *Statewide Commuter Assistance Study Corridor Profile Reports* (MDOT, 1990); the *Capital Beltway HOV Feasibility Study* (MDOT, 1992); *The Potential for Circumferential Transit in the Washington Region* (MWCOG, August 1993); the *I–270/US 15 Multi-Modal Corridor Study* (MDOT, 2002); the *Capital Beltway Study EIS* (VDOT, 2006); *Maryland's Statewide Express Toll Lanes Network Initiative* (MDOT, 2007); the *West Side Mobility Study* (MDOT and VDOT, 2009); and the *Purple Line Study* and the *Capital Beltway Study* (MDOT *et al.*, 2013).

The *Maryland's Statewide Express Toll Lanes Network Initiative* (MDOT, 2007) built on the studies listed above and provided an overview of the state's vision for a Statewide Express Toll Lanes Network on the State's busiest highway segments in the Baltimore-Washington Region, including I–495 and I–270. The major benefit of the Express Toll Lanes cited in the study was the ability to provide needed highway lane capacity to ease the impact of congestion by providing transportation improvements sooner than traditional approaches could otherwise achieve. As a result, Metropolitan Washington Council of Governments (MWCOG) recognized this statewide approach to Express Toll Lanes as regionally significant and Express Toll Lanes on I–495 and I–270, as well as other corridors in the Baltimore Washington Region, became part of the Constrained Long-Range Plan.

In July 2017, the National Capital Region Transportation Planning Board at the MWCOG approved a set of ten regional initiatives for further study, which includes analyzing managed lanes on the portions of I–495 and I–270 that are included in the I–495 and I–270 Managed Lanes Study. In September 2017, Maryland Governor Hogan announced the intent to develop additional capacity along sections of I–270, I–495, and the Baltimore-Washington Parkway (MD 295). For I–495 and I–270, the Governor has proposed a P3 to design, build, finance, operate, and maintain this project to accelerate the delivery of improvements for congestion relief.

**Scoping Process**

FHWA and MDOT SHA will undertake a scoping process for the I–495 & I–270 Managed Lanes Study that will solicit input from the public and interested agencies on the issues that will be evaluated in EIS. This public outreach effort will educate and engage stakeholders regarding the nature and extent of the proposed action. FHWA and MDOT SHA will invite all interested individuals, organizations, and public agencies to comment on the scope of the EIS, including the purpose and need, potential alternatives to be studied, environmental impacts to be considered, evaluation methods to be used, and potential mitigation measures.

More information on public outreach activities, including future public workshops, will be available in a project coordination plan on the Study website. All public meetings related to the Study will be held in locations accessible to persons with disabilities. Any person who requires special assistance, such as a language interpreter, should contact the I–495 & I–270 P3 Office at (833) 858–5960 via email at *495-270-P3@sha.state.md.us* at least 48 hours before the workshop.

Letters inviting agencies to be cooperating or participating in the environmental review process are being sent to those agencies that have jurisdiction or may have an interest in the EIS. Additionally, FHWA and MDOT SHA will notify cooperating and participating agencies of a separate agency scoping meeting.

**DATES:** Four initial public workshop presentations will be held in April 2018 to solicit public input regarding the scope of issues that will be included in the EIS. Written comments on the scope of the EIS should be provided to MDOT SHA by May 1, 2018, using the email address or physical mailing address listed below. Comments may also be provided in writing at the public workshops.

**ADDRESSES:** The public and other interested parties are encouraged to comment on-line at the Study's website (*www.495-270-P3.com*), via email at *495-270-P3@sha.state.md.us*, or by hard copy during the public workshops. Hard copy comments can also be mailed to the I–495 & I–270 Project Office at 707 North Calvert Street, Baltimore MD 21202.

**Authority:** 23 U.S.C. 315; 49 CFR 1.48; 23 CFR 771.111 and 771.123.

(Catalog of Federal Domestic Assistance Program Number 20.205, Highway Research, Planning and Construction. The regulations implementing Executive Order 12372 regarding intergovernmental consultation on Federal programs and activities apply to this program.)

Issued on: March 8, 2018.

**Gregory Murrill,**
*Division Administrator, Federal Highway Administration, Baltimore, Maryland.*
[FR Doc. 2018–05354 Filed 3–15–18; 8:45 am]
**BILLING CODE 4910–22–P**

**DEPARTMENT OF TRANSPORTATION**

**Federal Highway Administration**

**[Docket No. FHWA–2018–0015]**

**Agency Information Collection Activities: Request for Comments for a New Information Collection**

**AGENCY:** Federal Highway Administration (FHWA), DOT.
**ACTION:** Notice and request for comments.

**SUMMARY:** The FHWA has forwarded the information collection request described in this notice to the Office of Management and Budget (OMB) for approval of a new information collection. We published a **Federal Register** Notice with a 60-day public comment period on this information collection on June 19, 2017. We are required to publish this notice in the

I-495 / I-270 Interagency Working Group Meeting #1
Wednesday, March 14, 2018
10:00am – 12:00pm

**Introduction**

Caryn B, Lisa C. (P3), Jeff F., RKK, Laurel (NPS), JBA, MDP, MoCo Parks, EPA, USACE (Jack, Joe), DNR, MWCOG, Steve A., SHA travel forecasting, VDOT, USFWS, NMFS, MNCPC

**Overview – P3 – Lisa Choplin**

- I-495/270 capacity, ADT, congestion
- 30 years of past corridor studies
- 77+ miles of improvements
- P3 - $7.6 B – design, build, finance, operate, maintain project by private sector
    - This is to share risk with private sector, not shift 100% risk to private

**Question:** EPA asked what are the benefits of P3?

- Example: Travel plazas (I-95)
- Long history of design build in MD which is integral to P3
- P3 allows for schedule efficiency
- Purple Line – transit example

**I-495/270 Managed Lanes Study**

- Project limits not including WWB
- Study approach
    - Streamlining tools – FEIS/ROD

**Agency Coordination Expectations**

- Active roles. Participation, provide input

**NEW OFFICE LOCATION**

- Project will have separate office location in 601 building near Baltimore Sun
- Future meetings will be at this new office

**MD TERP Process**

- New player: Joint Base Andrews
- 3 concurrence points: P/N, ARDS, PACM

**Public Scoping Meetings**

- April 17, 18, 19, 24: 2 in Montgomery County, 2 in Prince George's County
- Live website
- Ads in newspapers to go out this week
- EJ consideration – will publish in specialty newspapers
- EPA suggested an EPA EJ person for SHA to get in touch who could be of help

**Question:** EPA asked about the private sector's ability to control prices for revenue and concerns of gauging public.

- There are protections in place for managed lanes.
- There are toll ceilings
- The focus is on mitigating congestion rather than collecting toll
- Currently, State is not intending on contributing to project

**Question:** What is TERP?

- Caryn explained what TERP process is and how it is MD's process to move through NEPA. It is not an alternative to NEPA. It is NEPA + 404 process.

**USACE – Joe Davia**

- Joe urged SHA to consider permit process they would undertake
- Requested separate meeting to discuss permit process with MDE, SHA and anyone else interested in the discussion
- Will not do what was done for US 219 on this project
- Provisional waiver is a blank waiver and would possibly mean duplicating efforts

**Preliminary Purpose**

- Will have P/N statement for Aprils IAWG meeting

**Schedule**

- Aggressive but achievable – see powerpoint slide for details
- Start construction 2020, completion - 2025

**Industry Forum**

- 300+ companies, RFI
- 14 concessionaires from around the world
- Significant interest

Notes:

- MD will own I-270/495. Private will not have ownership of roadway.

**FOR FURTHER DISCUSSION**

- Agendas, presentations, meeting materials should contain FHWA logo as well as MDOT SHA
- There will be no meeting minutes; open discussion meetings; action items wil be sent but no formal meeting minutes

**AGENDA**

1. Follow up from 1st IAWG Meeting
   - Discussion of agency comments and discussion points

2. Logical Termini Discussion
   - Follow up from VDOT meeting
   - Follow up from MD 5 paper sent on March 7, 2017

3. Purpose and Need
   - Discussion of final purpose and need summary
   - Statement will be presented to agencies at April IAWG Mtg

3. Scoping Open House
   - Details/logistics of open house
   - Presentation of advertising plan

4. HOV Conversion
   - Any follow up from HQ?

5. CLRP and NEPA
   - Any more questions or comments on the approach outlined in the one-page memo?

6. Section 106
   - Need letter from FHWA about taking lead for Section 106 consultation
   - Discuss FHWA's position about having the Draft PA in the DEIS

7. Use of e-NEPA

8. Review of Action Items/Dates for Resolution

9. Next Meeting: April 3, 2018







**Managed Lanes Study**

# First Interagency Working Group (IAWG)

## Agenda

- ➢ Introductions
- ➢ Overview and Study Context
- ➢ NEPA Study Limits
- ➢ Study Approach
- ➢ Agency Coordination Expectations
- ➢ Agency Roles and Responsibilities
- ➢ Interagency Working Group Framework
- ➢ Modified TERP Process
- ➢ Preliminary Purpose and Need
- ➢ Current Activities and Schedule
- ➢ Look Ahead

**Managed Lanes Study**

# National Capital Region's Congestion Challenge

- Most congested region in the Nation based on annual delay and congestion per auto commuter;

- I-270 and I-495 are among the most congested corridors in Maryland.



00055883

**Managed Lanes Study**

# National Capital Region's Congestion Challenge

 I-495 carries more than 240,000 people on a *daily* basis and is congested 10 hours per day.

 I-270 carries more than 260,000 people on a *daily* basis and is congested 7 hours per day.

**MARYLAND DEPARTMENT OF TRANSPORTATION**
**STATE HIGHWAY ADMINISTRATION**

**Managed Lanes Study**

# Previous I-495 & I-270 Studies

- Statewide Commuter Assistance Study Corridor Profile Reports (1990)

- Capital Beltway HOV Feasibility Study (1992)

- Capital Beltway Corridor Transportation Study (1998)

- I-270/US 15 Multi-Modal Corridor Study Draft EIS/Section 4(f) (2002)

- Capital Beltway Study (2004)

- Maryland's Statewide Express Toll Lanes Network Initiative (2007)

- The West Side Mobility Study (2009)

- The Purple Line Study (2013)

- I-270 Innovative Congestion Management Project (Present)

00055885

**Managed Lanes Study**

# MDOT's Traffic Relief Plan: I-495 & I-270 P3

Traffic Relief **Plan**
All announced TRP projects in Maryland

I-495 & I-270 P3 **Program**
Entire limits of I-495 and I-270

I-495 & I-270 Managed Lanes **Study**
I-495: south of the ALB to east of the WWB
I-270: I-495 to I-370

00055886

**Managed Lanes Study**

# What is a Public-Private Partnership (P3)?

- Development agreement to Design, Build, Finance, Operate and Maintain improvements;

- Private sector takes on project risks that are usually held by the public sector;

- Private sector gains the right to future revenues or payments over long-term agreement.

00055887

**INTERSTATE 495**
**INTERSTATE 270**
**Managed Lanes Study**

# Why a P3?

- Additional capacity and improvements to enhance reliability must be *financially viable*.

- MDOT's traditional funding sources would be *unable to effectively* finance, construct, operate, and maintain highway systems of this magnitude.

- A revenue source that provides appropriate funding, such as tolling options, is needed to provide additional capacity improvements addressing existing high travel demand.

**Managed Lanes Study**

# MDOT's
# I-495 and I-270
# P3 Team



**MDOT**
Pete Rahn, Secretary
P3 Steering Committee

**MDOT SHA**
Greg Slater, Administrator

**P3 Project Office**
Lisa Choplin, Director
Jeff Folden, Deputy Director
Caryn Brookman, Environmental Mgr.
Program GEC

**P3 Project Team**
AECOM
RK&K
Other Subconsultants

00055889

# I-495/I-270 Managed Lanes Study

NEPA Study Limits:
I-495 from south of the American Legion Bridge (ALB) in VA to east of the Woodrow Wilson Bridge (WWB), and

I-270 from I-495 split to I-370



**Managed Lanes Study**

# Study Approach

The I-495 and I-270 MLS approach will include:

- Developing alternatives on a broad, conceptual basis with minimal engineering;

- Focusing on the "footprint" and related impacts to allow innovation from the P3 industry;

- Identifying mitigation at a conceptual level to meet provisional permitting requirements.

*Innovative   Creative  Flexible*

00055891

**Managed Lanes Study**

# Streamlining Tools

Two-year EIS schedule from Notice of Intent (NOI) to Record of Decision (ROD);

- Identifying the Preferred Alternative in the DEIS;

- Combining the FEIS and ROD;

- Seeking a provisional permit based on conceptual mitigation;

- Using traditional and *innovative* public outreach methods.

00055892

**Managed Lanes Study**

# Streamlining Tools

- Utilizing streamlining tools from MAP-21, FAST Act, and EO 13807;

- Modifying the TERP Process;

- Developing new and using existing Interagency Staffing Agreements;

- Scheduling monthly Interagency Working Group meetings.

00055893

**Managed Lanes
Study**

# Agency Coordination Expectations

- Conduct environmental review in a coordinated and predictable manner;

- Use expedited document review schedules;

- Active participation and commit necessary staff and resources;

- Make timely decisions on critical issues;

- Use innovative solutions to avoid an impasse;

- Decisions based on conceptual design

00055894

**Managed Lanes Study**

# Roles and Responsibilities

## Lead Agencies: MDOT SHA and FHWA

- Work *collaboratively* and *respectfully* with interagency partners throughout the process

- Make every effort to provide project information for review prior to meetings to facilitate meeting discussions

- Set clear and reasonable deadlines for receiving agency comments

- Consider and address agency comments in a timely manner

00055895

**Managed Lanes Study**

# Roles and Responsibilities

Cooperating and Participating Agencies:

- Work *collaboratively* and *respectfully* with lead agency partners and study team throughout the process

- Provide data, data contacts, and other information as appropriate for their areas of expertise or jurisdiction

- "Identify and resolve issues that could delay the environmental review process or affect approvals required for the project under applicable laws" (23 USC 139.h)

- Review provided materials prior to meetings to facilitate discussion

- Adhere to established review and comment deadlines

**Managed Lanes Study**

# Interagency Working Group (IAWG) Framework

- IAWG meetings held monthly, 2nd Wednesday of the month

- Goals:
  - Identify, evaluate, and resolve environmental and regulatory concerns in a collaborative format to inform the EIS

  - Identify additional data sources or stakeholders

  - Obtain Cooperating Agency concurrence and Participating Agency comments on project milestones

00055897



**Managed Lanes Study**

# Interagency _Working_ Group (IAWG) Framework



**Managed Lanes Study**

# Maryland's Transportation Environmental Regulatory Process (TERP)

- Maryland's TERP Process is used to allow the documentation developed by MDOT SHA in compliance with NEPA *to serve as a substantial part* of the documentation required by the reviewing, permitting and funding agencies in accordance with applicable laws and regulations.

- TERP is intended to facilitate the *timely and efficient* identification, evaluation, and resolution of environmental and regulatory issues.

**Managed Lanes Study**

# Modified TERP Concurrence Process

### 1st IAWG Presentation

MDOT SHA will present the draft milestone document (i.e. Purpose and Need) at the IAWG meeting

Questions and concerns should be discussed during the presentation

### Review Period

Three (3) week review period by agencies.

Time to provide comments, concurrence or raise substantive issues.

### 2nd IAWG Presentation

MDOT SHA will address comments and present revised milestone document at next IAWG Meeting

Concurrence expected at the IAWG

00055900

**Managed Lanes Study**

# Thoughts or Feedback



00055901

**Managed Lanes Study**

# Preliminary Purpose

The purpose of the Maryland Traffic Relief Plan: I-495 & I-270 Managed Lanes Study is to accommodate existing and long-term traffic growth, enhance trip reliability, and improve travel choice within the Study limits.



**Managed Lanes Study**

# Preliminary Study Needs

The Study will address the following needs:

- Accommodate existing traffic and long-term traffic growth

- Enhance trip reliability

- Provide additional roadway travel choice

- Accommodate Homeland Security

- Improve movement of goods and services

00055903

**Managed Lanes
Study**

# Current Activities

- Sending invitation letters to Cooperating and Participating agencies (March 16th)

- Preparing public outreach strategy

- Preparing agency coordination plan

- Developing Purpose and Need

- Scheduling public scoping meetings

00055904

**Managed Lanes Study**

# Schedule

## 2018

- Notice of Intent –March 2018

- Scoping Public Meetings (4) – April 2018

- Alternatives Workshop – July 2018

## 2019

- NEPA Preferred Alternative – February 2019

- Public Hearing for Draft Environmental Impact Statement (EIS) – May 2019

## 2020

- Final EIS/Record of Decision – Early 2020

00055905

# Look Ahead to Upcoming Meetings

- April 11, 2018 IAWG
  - Present Purpose and Need
  - Present Agency Coordination Plan
  - Status of responses on Cooperating and Participating Agency Letters
  - Present public scoping materials
- May 8, 2018 IAWG
  - Concurrence on Purpose and Need
  - Concurrence on Agency Coordination Plan
  - Present Preliminary Alternatives

00055906

**Managed Lanes Study**

# Questions?

## Caryn Brookman, P3 Environmental Manager
### cbrookman@sha.state.md.us

## Lisa Choplin, P3 Project Director
### lchoplin@sha.state.md.us

**Coordination with FHWA**
April 3, 2018

## AGENDA

**March completed tasks:**
- NOI published
- CLRP/Travel Forecasting Approach approved
- 1st IAWG Meeting held
- Cooperating and Participating Agency letters sent
- Website established

- Scoping Meetings scheduled
- Scoping Advertisements published
- Elected Official letters sent
- Purpose and Need Summary approved

1. HOV conversion- Status of FHWA HQ/Secretary decision

2. Scoping Meetings- Review of boards, video, fact sheet, and staffing plan

3. 2nd IAWG Meeting- Review of agenda and presentations

4. Cooperating and Participating Agencies- Status of responses received to-date

5. Agency Coordination Plan and Schedule- Discussion of any comments

6. Noise Analysis Approach- Discussion of approach

7. 4 Month Schedule- Review of key action items

**Next Meeting:** April 17, 2018

00055930

# Tolling Considerations

| Issue | Open Questions | Notes |
|---|---|---|
| Federal and State Tolling Authority | Can the private sector set toll rates? Collect tolls? Enforce tolls? If so, does the tolling contract need to be with SHA or MDTA? Under which federal tolling program will tolls be collected? | This issue is critical to the success of the P3 since the entire deal hinges on toll revenues. An AG advice letter says that only MDTA has the authority to set and collect tolls, therefore only they can contract that power to someone else. Collection tools like MVA flagging/suspension and CCU referral are only for State debt. |
| Toll Setting Process | What will the process be for setting toll rates? Assuming the toll rates are based on a formula, will the formula be built based on maintaining certain speeds, throughput, other? | These decisions impact toll rates. The higher the average speed, the higher the toll rates (you need to price more people out of the lanes). Ultimately, driver decisions will push toll rates up or down based on their decision to use the toll road. The financial success of managed lanes depends on the operational failure of the adjacent general purpose lanes. MDTA is required to complete certain legislative notification and public input before increasing tolls. |
| Toll Setting Policy | Will there be limits on toll rates? On annual increases? How will fees for toll enforcement be set? Will there be limits on the fees? | Soft or hard toll caps can be used to increase public perception but can limit revenue. |
| Toll Policy | Are trucks allowed in toll lanes? Are trucks charged higher rates? Do HOVs ride free? Does transit ride free? | MDTA allows trucks at higher rates and HOVs are not free. If transit riding free is required, there will need to be some provision for HOV. Federal law prohibits free access only to State transit vehicles – you have to provide the same benefits to private transit. |
| Tolling Technology | Is E-ZPass acceptance/interoperability required? Will video tolling be allowed? | MDTA and most of East Coast uses E-ZPass. If HOV free is permitted, E-ZPass Flex transponders are needed, which currently are not used by MDTA. MDTA uses video tolling as a toll collection method, not just an enforcement method. |

| | | |
|---|---|---|
| Backoffice | Will each concessionaire bring its own toll operator?  Do you require the everyone else to integrate into the back office of the 1st concessionaire?  Does MDTA provide this service? | Requiring each concessionaire to bring their own backoffice will result in less optimal customer experience and inefficiency as each concessionaire builds its own backoffice.  Using MDTA's backoffice allows a consistent customer experience, efficiency, reliable and known costs to concessionaire (concessionaire would pay per transaction cost), and allow MD to control customer service.  With MDTA's new 3G contract, the MDTA backoffice is scalable and able to perform this work.  Depending on the structure of the agreement, moving the backoffice to MDTA could reduce the collections risk for the concessionaire, reducing some risk. |
| Collections Risk | If State were to provide backoffice, opportunity to transfer collection risk to State (in exchange State retains all violation fees and citation fees). | If State retains collections risk 1) since this is now State debt, should be able to utilize MDTA's enforcement tools (citations, MVA, CCU) and 2) results in less risk to concessionaire, which increases upfront payment |
| Future Technology | What contract provisions will be included for interoperability? | The federal government is requiring interoperability among toll facilities in the near future but it is not yet known how that will work. |
| Configuration of Toll Lanes | Will the lanes be barrier separated vs open access vs pylons, etc.?  How many entry/exit points and where located?  How many gantries/tolling points and where located? | These decisions all have important impacts on revenue potential. |
| Business Rules Across Corridor | How to achieve harmonization of business rules across the corridor (can't have different sets of rules for each segment = customer service nightmare) | Should include in first contract a negotiation point to conform business rules with later contracts – may be revenue implications) |
| Revenue Growth | If revenue exceeds expectations by a certain amount, will revenue-sharing with the State be required? | |

**Coordination with FHWA**

April 17, 2018

**AGENDA**

1. HOV conversion- Status of FHWA HQ/Secretary decision

2. Cooperating and Participating Agencies- Status of responses received to-date

3. 2nd IAWG Meeting- Discussion of any major issues raised

4. Purpose and Need- Discussion of any substantive concerns

5. Noise Analysis Approach- Discussion of approach

6. Permitting and mitigation approach- Follow up discussion from meeting with COE

   and MDE

7. e-NEPA- Discussion of use during the NEPA process

8. 4 Month Schedule- Review of key action items

**Next Meeting:** May 1, 2018

**Coordination with FHWA**
May 1, 2018

**AGENDA**

1.  Schedule Update

2.  Scoping Open House Debriefing

3.  Cooperating and Participating Agencies- Update on remaining responses

4.  Purpose and Need- Discussion of any substantive concerns

5.  e-NEPA- Update on testing

6.  Executive Order MOU- One Federal Decision for all agencies?

7.  4 Month Schedule- Review of key action items

**Next Meeting:** May 15, 2018

  

# Welcome to the
# 2nd Interagency Working
# Group (IAWG)

# April 12, 2018

00056583

 

# Today's Agenda

➢ Introductions/Staffing Updates

➢ Status of Cooperating and Participating Agency
Letters and Responses

➢ Public Scoping Meeting Plan

➢ Agency Coordination Plan and Schedule

➢ Purpose and Need

➢ Current Activities and Schedule

➢ Look Ahead

00056584

 

# Invited Cooperating Agencies

**Federal Agencies:**

- US Army Corps of Engineers (USACE) Baltimore and Norfolk Districts

- Environmental Protection Agency (EPA)

- National Park Service (NPS)

- US Department of Agriculture (Beltsville Agricultural Resources Center-BARC)

- US Department of Defense – Joint Base Andrews (JBA)

- U.S. Postal Service (USPS)

**State Agencies:**

- MD Department of Environment (MDE)

- Maryland Department of Natural Resources (MDNR)

- Maryland Historical Trust (MHT)

- Virginia Department of Transportation (VDOT)

**Local Agencies:**

- Maryland-National Capital Park and Planning Commission (M-NCPPC)

00056585

 

# Invited Participating Agencies

## Federal Agencies:

- Federal Emergency Management Agency (FEMA)
- Natural Resource Conservation Service (NRCS)
- Federal Transit Administration (FTA)
- US Fish and Wildlife Service (USFWS)
- Advisory Council on Historic Preservation (ACHP)
- National Capital Planning Commission (NCPC)
- Federal Railroad Administration (FRA - Amtrak)
- FHWA – Virginia Division
- National Marine Fisheries Service (NMFS)- NOAA

## Local Agencies:

- Prince George's County Public Works and Transportation
- Montgomery County Department of Transportation
- Metropolitan Washington Council of Governments (MWCOG) National Capital Region Transportation Planning Board

## State Agencies:

- Maryland Board of Public Works (BPW)
- Maryland Department of Planning (MDP)
- MDOT Maryland Transit Administration (MTA)
- MDOT Maryland Transportation Authority (MDTA)
- Virginia Department of Game and Inland Fisheries (VDGIF)
- Virginia Department of Environmental Quality (VDEQ)
- Virginia Department of Historic Resources (VDHR)
- Virginia Marine Resources Commission (VMRC)
- Virginia Department of Forestry (VDF)
- Virginia Department of Conservation and Recreation

00056586

  

# Public Scoping Meetings

| Location | Date and Time |
|---|---|
| **Open House 1**<br>Dr. Henry Wise Jr. High School<br>12650 Book Lane, Upper Marlboro 20772 | Tuesday, April 17, 2018<br>6:30 pm - 8:30 pm |
| **Open House 2**<br>Clarksburg High School<br>22500 Wims Road, Clarksburg 20871 | Wednesday, April 18, 2018<br>6:30 pm - 8:30 pm |
| **Open House 3**<br>Bethesda Chevy Chase High School<br>4301 East West Highway, Bethesda 20814 | Thursday, April 19, 2018<br>6:30 pm - 8:30 pm |
| **Open House 4**<br>Eleanor Roosevelt High School<br>7601 Hanover Parkway, Greenbelt 20770 | Tuesday, April 24, 2018<br>6:30 pm - 8:30 pm |

00056587

  

# Scoping Open House Outreach Campaign

**Newspaper Printed Ads:** The Washington Post, Frederick News Post, Laurel Leader, Howard County Times, Prince George's Sentinel, El Tiempo, and Washington Hispanic

**Postcards:** The Washington Post- 690,000 Local Living Insert Postcards

**Online Digital Ads:** WTOP.com, DCBlack.com, Afro.com

**MDOT SHA News Release and Social Media Channels**: Post ads on Facebook and Instagram

**Earned Media Promotions**

**Email Blasts:** All stakeholders who have signed up for notifications via project website

**Letters:** Mailed and Email to Elected Officials

**Project Website**: www.495-270-P3.com

00056588

 

# Agency Coordination Plan

*Highlights:*

- 22 Interagency Working Group (IAWG) Meetings
- 4 Concurrence/Comment Milestones
- 2 Milestone Public Meetings and 1 Public Hearing
- Bi-weekly Lead Agency Meetings
- Elected Official Meetings
- Individual Agency Meetings
- Community Meetings

00056589



# Coordination Points and Schedule

- Notice of Intent (Lead Agencies)- March 2018

- Cooperating/Participating Agency Invitations- April 2018

- Scoping & Purpose and Need- March-May 2018

- Alternatives Retained for Detailed Study- August 2018

- Draft Environmental Impact Statement/Draft Section 4(f) Evaluation- May 2019

- Preferred Alternative- July 2019

- Final Environmental Impact Statement/Final Section 4(f) Evaluation/Record of Decision- January 2020

00056590

 

# Purpose and Need

- Accommodate Existing Traffic and Long-Term Traffic Growth

- Enhance Trip Reliability

- Provide Additional Roadway Travel Choice

- Accommodate Homeland Security

- Movement of Goods and Services

00056591




# Purpose and Need

*Accommodate Existing Traffic and Long-Term Traffic Growth*

- Maryland's **top five** highest freeway Annual Average Daily Traffic (AADT) volumes are *all in the I-495 and I-270 study area*

- Severe existing congestion nearly 10 hours per day

- I-495 and I-270 carry between 240,000 and 260,000 vehicles per day

- MWCOG estimates population growth between 2015-2040 for MO and PG counties at 18% and 9%, respectively

- This growth is exceeded in the surrounding counties by 33% (Calvert, Charles, and Frederick Counties)

- MWCOG estimates employment growth between 2015-2040 for MO and PG counties at 26% and 16%, respectively

00056592





# Purpose and Need

*Enhance Trip Reliability*

- **Travel Time Index (TTI)** = One of the primary measures of congestion on freeways/expressways

- The *higher* the TTI, for a given hour of the day, the longer the travel times

- **TTI > 2=Severe congestion**

- **Planning Time Index (PTI)**= Total time motorists should allow to ensure they arrive at their destination on-time while taking into account potential delays due to non-recurring congestion.

- The *lower* the PTI number, the more reliable the trip. The *high*er the PTI value, the less reliable and longer a trip might take.

- **PTI > 2.5= Highly to Extremely Unreliable**

00056593







| | Road | Location | Direction | 2015 Rank (TTI) | 2014 Rank (TTI) | 2013 Rank (TTI) | 2015 Rank (PTI) | 2014 Rank (PTI) | 2013 Rank (PTI) |
|---|---|---|---|---|---|---|---|---|---|
| **AM** | I-495 | MD 650 to MD 193 | Outer | 1 (4.4) | 2 (3.9) | 2 (3.83) | 6 (8.5) | 6 (7.5) | 10 (7.13) |
| | I-495 | @ MD 650 | Outer | 2 (4.4) | 1 (4.0) | 1 (4.14) | 1 (9.2) | 1 (9.0) | 1 (8.29) |
| | I-495 | PG County Line to MD 650 | Outer | 3 (3.7) | 3 (3.6) | 3 (3.56) | 2 (9.1) | 2 (8.7) | 3 (7.86) |
| | I-495 | MD 193 to US 29 | Outer | 4 (3.6) | 4 (3.2) | 4 (3.15) | 15 (6.3) | 15 (5.8) | 22 (5.45) |
| | I-495 | US 29 to MD 97 | Outer | 8 (2.8) | 7 (2.5) | 17 (2.42) | 48 (4.4) | 47 (4.0) | NL |
| | I-270 | @MD 189 | South | 13 (2.5) | 17 (2.2) | 15 (2.44) | 36 (4.9) | 43 (4.2) | NL |
| | I-270 | Shady Grove Rd to MD 28 | South | 14 (2.4) | 10 (2.5) | 9 (2.66) | 20 (5.6) | 17 (5.6) | 14 (6.18) |
| | I-495 | I-95 to Mont. County Line | Outer | 15 (2.4) | 8 (2.5) | 12 (2.52) | 4 (9.0) | 3 (8.6) | 2 (8.18) |

| | Road | Location | Direction | 2015 Rank (TTI) | 2014 Rank (TTI) | 2013 Rank (TTI) | 2015 Rank (PTI) | 2014 Rank (PTI) | 2013 Rank (PTI) |
|---|---|---|---|---|---|---|---|---|---|
| **PM** | I-495 | Cabin John Pkwy to MD 190 | Inner | 4 (3.7) | 3 (3.6) | 1 (3.81) | 9 (7.4) | 9 (7.1) | 8 (6.96) |
| | I-270 Spur | @ I-495 | South | 5 (3.6) | 50 (2.0) | NL | 2 (12.0) | 3 (9.6) | 2 (8.86) |
| | I-495 | Clara Barton Pkwy to Cabin John Pkwy | Inner | 8 (3.2) | 7 (3.1) | 6 (3.06) | 17 (6.3) | 20 (5.6) | 25 (5.17) |
| | I-495 | MD 190 to I-270 Spur (West) | Inner | 9 (3.1) | 8 (3.1) | 8 (2.95) | 38 (5.1) | 26 (5.3) | NL |
| | I-495 | @ Clara Barton Pkwy | Inner | 11 (3.0) | 11 (2.9) | 10 (2.84) | 27 (5.5) | 25 (5.3) | NL |
| | I-270 Spur | @Democracy Blvd | South | 12 (3.0) | 74 (1.8) | 24 (2.31) | 1 (15.0) | 1 (11.7) | 1 (9.30) |
| | I-495 | MD 191 to MD 190 | Outer | 13 (2.9) | 62 (1.9) | NL | 19 (6.2) | 40 (4.7) | NL |
| | I-495 | US 1 to Greenbelt Metro | Inner | 14 (2.9) | 16 (2.5) | 27 (2.26) | 40 (5.0) | 48 (4.6) | NL |

00056594




U.S. Department of Transportation
Federal Highway Administration

MDOT
MARYLAND DEPARTMENT
OF TRANSPORTATION
STATE HIGHWAY
ADMINISTRATION

# Purpose and Need

## *Provide Additional Roadway Travel Choice*

- No existing free-flowing travel options in the study area during peak use periods

- Existing vehicles, trucks, buses, carpool, and vanpool users are typically limited to existing general purpose lanes.

- Other than choosing alternative routes (i.e. arterial streets), no options exist for roadway users to avoid non-recurring delays such as crashes.



00056595

 

# Purpose and Need

## *Accommodate Homeland Security*

- National Capital Region is one of the nation's primary hubs for government agencies, military installations, and other facilities related to homeland security
  - 14 U.S. Department of Homeland Security Agencies
  - 10 Department of Defense (DoD) Agencies
  - 9 Additional Homeland Security/Defense-related Agencies
  - 25 Major Hospitals

- A variety of radial corridors in the National Capital Region are designated as emergency evacuation routes, all of which lead from downtown DC to I-495



00056596



00056597

 

# Purpose and Need

*Movement of Goods and Services*

- I-495 and I-270 are essential transportation connections to the productivity of the National Capital Region's economy

- Between 2013-2015, the total cost of congestion to users in the National Capital Region exceeded all other regions in Maryland

- Freight-dependent industries account for 19% of the National Capital Region's Gross Domestic Product (GDP $464B in 2013) and among these industries, truck transportation mode accounts for 86% of the total weight and 79% of the total volume of freight moved

- I-495 and I-270 are designated Tier 1 truck routes under the Regional Freight-Significant Network; I-495 has between 12,000-20,000 and I-270 over 20,000 trucks per day

00056598




# Purpose and Need

*Incorporate Funding Sources for Financial Viability*

- Maryland's traditional funding sources, including the Transportation Trust Fund, are unable to effectively finance, construct, operate, and maintain highway systems, of this magnitude due to fiscal constraints

- Large-scale improvements over the 55 mile corridor would require decades to accumulate enough revenue in the State's Transportation Trust Fund to constrain the improvements with traditional funding

- The use of alternative funding, such as tolling options, provides needed improvements decades earlier than would otherwise be realized using traditional funding and allows for the project to be fiscally-constrained in the Metropolitan Transportation Plan.

00056599

 

# Current Activities and Schedule

- Preparing for 4 Scoping Open Houses

- Initiating environmental technical studies

- Initiating field work to identify environmental resources and confirm existing conditions

- Initiating the Section 106 consultation process

00056600

  

# Look Ahead to Upcoming Meetings

- May 9, 2018 IAWG
  - Concurrence on Purpose and Need
  - Concurrence on Agency Coordination Plan
  - Summarize Scoping Meetings and comments received
  - Present environmental inventory and impact analysis methodologies
  - Present design criteria and preliminary conceptual alternatives
- June 13, 2018 IAWG
  - Present revised preliminary alternatives and rationale for dropping or modifying from May's presentation
  - Present final alternatives going to Alternatives Public Workshop in July.

00056601

  

# Questions?

## Caryn Brookman, P3 Program Environmental Manager
cbrookman@sha.state.md.us
410-637-3335

## Lisa Choplin, P3 Program Director
lchoplin@sha.state.md.us
410-637-3320

00056602



**Coordination with FHWA**
June 5, 2018

**AGENDA**

1. Traffic Modeling conference call- Debriefing

2. Interstate Access Point Approval- Discussion of process and timing

3. Logical Termini paper- Overview of paper and conclusions

4. Scoping Report- Discussion of comments

5. Purpose and Need- Discussion of any FHWA-HQ comments

6. Air Quality Approach Memo- Discussion of comments

7. Section 106 Update- APE and Virginia & Maryland Tribal letters

8. 4 Month Schedule- Review of key action items

**Next Meeting:** June 19, 2018

00057883



**I-495 & I-270 Managed Lanes Study**
**Montgomery and**
**Prince George's Counties, Maryland**
**Fairfax County, Virginia**
*Agency Coordination Plan*

**05/16/18**



U.S. Department of Transportation
**Federal Highway Administration**



MARYLAND DEPARTMENT
OF TRANSPORTATION
STATE HIGHWAY
ADMINISTRATION

This Agency Coordination Plan (ACP) establishes a framework for coordinating among federal, state, and local agencies to meet NEPA and other regulatory requirements in the development of the I-495 & I-270 Managed Lanes Study Environmental Impact Statement (EIS).  The goal of the ACP is to ensure that agencies and key stakeholders are involved in and/or informed of study progress and key decision points.

The Federal Highway Administration (FHWA) will serve as the lead federal agency for the EIS with Maryland Department of Transportation State Highway Administration (MDOT SHA) serving as the local project sponsor and joint lead agency. In addition to the study's Lead Agencies, three levels of agency involvement are anticipated and include Cooperating Agencies, Participating Agencies (federal/state and local), and Notified Agencies/Stakeholders.

- **Cooperating Agencies** include those federal, state and local agencies that would ultimately be responsible for identifying and approving the preferred alternative, pursuant to NEPA, Sections 401 and 404 of the Clean Water Act, and/or the *MD Nontidal Wetlands* Protection *Act and/or* MD Tidal Wetlands Act.  In addition, other key federal, state, regional, and local agencies with regulatory or management jurisdiction over sensitive resources will be invited to act as Cooperating Agencies.  It is also anticipated that right-of-way or a permit may be needed from these agencies.

- **Participating Agencies** include those federal, state and local agencies that have jurisdiction over a potentially affected resource, could ultimately be involved with issuing a permit or approval, have expertise or information relevant to the study, or otherwise may intend to submit comments on the study.

- **Notified Agencies** include all other agencies who could have an interest in the project, or that have a role that is yet to be determined.  These agencies would be notified of study milestones concurrently with the public and those milestone notification points are part of the public involvement plan.

The specific agencies and their anticipated roles are provided in the **Table 1**.

00057904

**Table 1: Federal, State, Regional, and Local Agencies and Roles**

| Role | Federal Agencies | Maryland / State Agencies | Local Agencies and Regional Stakeholders |
|---|---|---|---|
| **Lead Agency -** As codified in 23 U.S.C. Section 139, manages the coordination process; prepares EIS; provides opportunity for public & participating/ cooperating agency involvement. Defined as the Department of Transportation and, if applicable, any State or local governmental entity serving as a joint lead agency. | • Federal Highway Administration (FHWA) – Maryland Division | | |
| **Local Project Sponsor -** a State or local governmental entity receiving funds under 23 U.S.C. Section 139 or chapter 53 of title 49 for the project shall serve as a joint lead agency with the Department for purposes of preparing any environmental document under NEPA. | | • MDOT State Highway Administration (MDOT SHA) | |

00057905

| Role | Federal Agencies | Maryland / State Agencies | Local Agencies and Regional Stakeholders |
|---|---|---|---|
| **Cooperating Agencies -** 23 CFR 771.111(d) requires those agencies with jurisdiction by law (permitting or land transfer authority) to be invited to be cooperating agencies for an EIS. Other agencies having special interest or expertise with respect to any environmental impact involved in a proposed project or project alternative may also be invited. | • US Army Corps of Engineers (USACE) Baltimore and Norfolk Districts (Baltimore District-Lead)<br>• Environmental Protection Agency (EPA)<br>• National Park Service (NPS)<br>• US Department of Agriculture (Beltsville Agricultural Resources Center) (*Invited*)<br>• National Capital Planning Commission (NCPC) | • MD Department of Environment (MDE)<br>• Maryland Department of Natural Resources (MDNR)<br>• Virginia Department of Transportation (VDOT) | • Maryland-National Capital Park and Planning Commission (M-NCPPC) |
| **Participating Agencies -** 23 U.S.C. Section 139 are federal, state, tribal, regional, and local governmental agencies that have an interest in the project. These participating agencies are formally invited to participate in the environmental review of the project. Nongovernmental organizations and private entities cannot serve as participating agencies. | • Federal Emergency Management Agency (FEMA) (*Invited*)<br>• Federal Transit Administration (FTA)<br>• US Fish and Wildlife Service (USFWS)<br>• Advisory Council on Historic Preservation (ACHP) (*Invited*)<br>• Federal Railroad Administration (FRA - Amtrak)<br>• National Marine Fisheries Service (NMFS)- NOAA<br>• US Department of Defense – Joint Base Andrews (JBA)<br>• US Postal Service (USPS)<br>• Natural Resources Conservation Service (NRCS) | • Maryland Historical Trust (MHT)<br>• Maryland Department of Planning (MDP)<br>• MDOT Maryland Transit Administration (MTA)<br>• MDOT Maryland Transportation Authority (MDTA)<br>• Virginia Department of Environmental Quality (VDEQ) (*Invited*)<br>• Virginia Department of Historic Resources (VDHR)<br>• Virginia Department of Conservation and Recreation (VDCR) | • Prince George's County Public Works and Transportation<br>• Montgomery County Department of Transportation |

00057906

| Role | Federal Agencies | Maryland / State Agencies | Local Agencies and Regional Stakeholders |
|---|---|---|---|
| **Notified Agencies** | • US Geological Survey<br>• National Institute of Standards and Technology (NIST) | • Maryland State Police<br>• Maryland Department of Agriculture<br>• MDOT Motor Vehicle Administration (MDOT MVA)<br>• Maryland Commission on Indian Affairs<br>• Maryland Natural Resources Police<br>• DNR Critical Area Commission (CAC) | • Howard County<br>• Frederick County<br>• Metropolitan Washington Council of Governments (MWCOG) Transportation Planning Board (TPB) |

00057907

MDOT SHA and FHWA will regularly engage with the agencies throughout the two-year study.  Interagency Agency Working Group (IAWG) Meetings will be convened monthly by MDOT SHA and attended by Lead, Cooperating, and Participating Agencies.  IAWG Meetings will focus on presenting the study approach, as well as the results of major study findings at key milestones.  MDOT SHA will be seeking comment from all Participating Agencies, and written concurrence at IAWG meetings from the Cooperating Agencies at concurrence milestones.  A summary of the IAWG Meeting Schedule is included in **Table 2.** MDOT SHA plans to obtain written concurrence at these same milestones from the primary permitting agencies, which include USACE and MDE.  Information MDOT SHA is seeking concurrence on will be presented at an IAWG Meeting one-month prior to the IAWG meeting MDOT SHA will be seeking concurrence to allow each agency to review and comment for discussion at the meeting.   Agencies that identify a major issue of concern are asked to contact MDOT SHA no later than one week prior to the meeting to discuss the issue and identify what might be needed to resolve the concern. Agencies would be asked to provide concurrence (at concurrence milestones) at the meeting.  MDOT SHA will follow-up with agencies in that timeframe to ensure all comments and any outstanding concurrences from Cooperating Agencies or permitting agencies are received.  A summary of anticipated key coordination points is provided in **Table 3**. The primary concurrence milestones are indicated in bold in the table and include:

1. This Coordination Plan Schedule

2. Purpose and Need Statement

3. Alternatives Retained for Detailed Study (ARDS)

4. Preferred Alternative and Mitigation Plan

Agency meetings are anticipated to be convened in a tiered approach when necessary.  Lead, Cooperating and Participating Agencies will meet as needed between IAWG Meetings to address any major issues that could hinder concurrence at identified milestones and that cannot be addressed efficiently in the broader interagency meetings.  In addition, issues that cannot be resolved within the framework of the IAWG Meetings, or separate Lead and Cooperating Agency meetings will be addressed in accordance with procedures laid out in 23 USC §139(h) or Appendix F of Maryland's Transportation Environmental Regulatory Process (TERP).

00057908

**Table 2: Coordination Point and Meetings- *Blue* highlights indicate public meetings; *Yellow* highlights indicate concurrence points**

| Meeting | Date/Timeframe | Public or Agencies Involved | Key Topic(s) |
|---|---|---|---|
| Elected Officials Meetings | Ongoing | Elected Officials | Coordinate with elected officials as appropriate throughout the study. |
| Community Meetings | Ongoing | Public, special interest groups | Meetings with community associations or advocacy groups, as appropriate. |
| Lead Agency Coordination Meetings | Bi-weekly | FHWA, MDOT SHA | Study schedule, strategy, and critical concerns. |
| Interagency Working Group Meetings (IAWG) | Monthly – beginning in March 2018 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Lead Agencies to meet with federal and state permitting agencies and other participating agencies to identify, evaluate and resolve environmental and regulatory concerns in a collaborative format to inform the EIS and environmental review process. |
| IAWG #1 | March 14, 2018 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Agencies introduced to study, including limits, IAWG framework, summary of preliminarily identified needs. |
| IAWG #2 | April 12, 2018 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Agencies presented with preliminary purpose and need, Agency Coordination Plan and Schedule, Public Scoping Materials, and status of Cooperating and Participating Agency Letter responses. **Cooperating and Participating Agency invitation acceptance due 4/23-4/26.** |
| Public Meetings #1 Scoping | April 17 – Upper Marlboro April 18 – Clarksburg April 19 – Bethesda April 24 - Greenbelt | Public | Introduce the study, give an overview of the NEPA process and schedule, present the preliminary purpose and need, and request input on the scope of issues to be included in the EIS.  Provide the public an opportunity to offer early input. |
| IAWG #3 | May 16, 2018 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Summarize scoping meetings and comments. Present environmental inventory. Present full range of preliminary alternatives and screening criteria. **Concurrence on Agency Coordination Plan & Schedule and Purpose and Need.  Agency and public scoping period closes.** |
| IAWG #4 | June 13, 2018 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Lead agencies present preliminary screened alternatives going to July Public Workshop. |
| No IAWG Scheduled | July 11, 2018 | NA | NA |

00057909

| Meeting | Date/Timeframe | Public or Agencies Involved | Key Topic(s) |
|---|---|---|---|
| Public Meetings #2- Alternatives | Weeks of July 16 and 23, 2018 | Public | Public Workshop to present the purpose and need; range of alternatives, screening criteria and preliminary screened alternatives. |
| IAWG #5 | August 8, 2018 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Present summary of Alternatives Public Workshop.  Present technical study methodologies. |
| MPO Presentation | August 15, 2018 | Lead Agency and MPO | If requested, presentation to describe comments received at the Alternatives Public Workshop. |
| IAWG #6 | September 12, 2018 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Present preliminary conceptual mitigation approach. |
| IAWG #7 | October 10, 2018 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Courtesy update. |
| IAWG #8 | November 14, 2018 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Present Alternatives Retained for Detailed Study (ARDS) including majority of environmental impacts. Present December public meeting material. |
| No IAWG Scheduled | December 10, 2018 | NA | NA |
| Public Meetings #3- ARDS | December 2018 | Public | Public Workshop to present Alternatives Retained for Detailed Study. |
| IAWG #9 | January 9, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Technical environmental reports available for agency review.  **Lead agencies request Cooperating Agencies concurrence on list of ARDS.** |
| IAWG #10 | February 13, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Present conceptual mitigation package. |

00057910

| Meeting | Date/Timeframe | Public or Agencies Involved | Key Topic(s) |
|---------|----------------|------------------------------|--------------|
| IAWG #11 | March 13, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Present MDOT SHA Recommended Alternative. |
| IAWG #12 | April 10, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | MDOT SHA to circulate and present preliminary DEIS/Draft Section 4(f) for FHWA and Cooperating agency concurrent review. |
| Mandatory Referral | April 2019 | Lead agencies, Montgomery County, and M-NCPPC | MDOT SHA to present Recommended Alternative to Planning Board. |
| IAWG #13 | May 8, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Lead agencies to discuss and address comments on DEIS/Draft Section 4(f). |
| IAWG # 14 | June 12, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Discuss comments on conceptual mitigation package. |
| No IAWG Scheduled | July 10, 2019 | NA | NA |
| IAWG #15 | August 14, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Courtesy update. |
| Joint Public Hearing | September 2019 | Public | Joint Public Hearings in multiple locations to present the DEIS. |
| IAWG #16 | October 9, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Present summary of Public Hearing and overview of comments received. Discuss specific agency comments on DEIS/Draft Section 4(f), as appropriate. |
| IAWG #17 | November 13, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Present Preferred Alternative/final mitigation package to agencies. |

00057911

| Meeting | Date/Timeframe | Public or Agencies Involved | Key Topic(s) |
|---------|----------------|------------------------------|--------------|
| IAWG # 18 | December 11, 2019 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Discuss comments on Preferred Alternative/final mitigation package. |
| **IAWG #19** | **January 8, 2020** | **Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO** | **Lead agencies request concurrence on Preferred Alternative/Final Mitigation Package from agencies.** |
| IAWG # 20 | February 12, 2020 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Courtesy update. |
| IAWG # 21 | March 11 ,2020 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Courtesy update. |
| IAWG # 22 | April 8, 2020 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Circulate preliminary FEIS/Final Section 4(f) for FHWA/Cooperating agency concurrent review. |
| IAWG # 23 | May 13, 2020 | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | Present summary of FEIS/Final Section 4(f)/ROD to agencies. |

Note: IAWGs are assumed to be held in-person with virtual call-in capability.  Full virtual meetings will be considered where appropriate as the study progresses. IAWGs will not be open to the public. All dates are subject to change; affected parties will be notified and the Coordination Plan updated.

00057912

**Table 3: Key Coordination Points –** *Blue highlights indicate public involvement and green highlights indicate permitting point.*

| Coordination Point | Public or Agencies Involved | Coordination Required (roles and responsibilities) | Method Used for Coordination | Coordination Timeframe |
|---|---|---|---|---|
| Notice of Intent (NOI) for EIS | Lead Agencies | None- notification | Federal Register notice | March 16, 2018 |
| Cooperating & Participating Agency Letters/Scoping Letter | Lead, Cooperating, all Participating, and Notified | • Send Cooperating and Participating agencies an invitation letter within 45 days of NOI.<br>• Notices sent to other agencies and stakeholders.<br>• Cooperating/Participating Agency acceptance due within 30 days. | Letter/email | • March 19-26, 2018<br>• April 16, 2018<br>• April 26, 2018 |
| Scoping & Purpose and Need | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | • Agencies presented with/comment on study scope and approach.<br>• Agencies presented with preliminary purpose and need, Agency Coordination Plan & Schedule, public scoping materials, and status of cooperating and participating agency letters responses.<br>• Discuss public input from scoping.<br>• Discuss agency comments and request concurrence on Purpose and Need and Agency Coordination Plan & Schedule, present preliminary range of alternatives.<br>• Present full range of alternatives going to Alternatives Public Workshop.<br>• Present Alternatives Public Workshop materials. | IAWGs | • March 2018<br><br>• April 2018<br><br><br><br>• May 2018<br><br><br><br>• June 2018 |
| | Notified Agencies | • Notification in conjunction with NOI/Public Scoping.<br>• Notification of public meetings. | Email Notification | • April 2018<br>• As needed |

00057913

| Coordination Point | Public or Agencies Involved | Coordination Required (roles and responsibilities) | Method Used for Coordination | Coordination Timeframe |
|---|---|---|---|---|
| | Public | • Public Workshop #1 (Scoping Open House) to introduce the study, give an overview of the NEPA process and schedule, present the preliminary purpose and need, and request input on the scope of issues to be included in the EIS. Provide the public an opportunity to offer early input.<br>• Public Workshop #2 (Alternatives) to present the purpose and need, full range of preliminary alternatives, screening criteria and preliminary screened alternatives | Public Meetings | • April 17, 18, 19, & 24 2018<br><br>• July 2018 |
| Alternatives Retained for Detailed Study (ARDS) | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | • Distribute environmental technical reports.<br>• Distribute and present ARDS package.<br>• Agencies to comment/concur on ARDS.<br>• Present conceptual mitigation package.<br>• Present MDOT SHA Recommended Alternative. | IAWGs | • October-January 2018<br>• December 2018<br>• January 2018<br>• February 2019<br>• March 2019 |
| | Public | • Public Workshop #3 (ARDS) to present alternatives retained for detailed study. | Public Meeting | • December 2018 |
| Draft Environmental Impact Statement (DEIS) | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | • Present and distribute preliminary DEIS/Draft Section 4(f).<br>• Review of DEIS and responses to comments. | IAWG and electronic document sharing via email or PW | • April 2019<br><br>• May 2019 |
| | USACE and MDE | • Submittal of Joint Permit Application (JPA) to USACE and MDE<br>• DEIS initiates USACE permit review | DEIS | • July 2019<br><br>• August 2019 |
| | Notified Agencies | Notification of Availability of DEIS. | Letter/email notification | • August 2019 |

00057914

| Coordination Point | Public or Agencies Involved | Coordination Required (roles and responsibilities) | Method Used for Coordination | Coordination Timeframe |
|---|---|---|---|---|
| | Public | • Notice of Availability (NOA) in Federal Register.<br>• Joint Public Hearing will be held in various locations to present the DEIS. | Federal Register<br>Public Hearing | • August 2019<br>• September 2019 |
| Final Environmental Impact Statement (FEIS)/ Final Section 4(f) Evaluation and Record of Decision (ROD) | Lead, Cooperating, Participating Agencies and other federal, state agencies and MPO | • Present Preferred Alternative/final mitigation package.<br>• Receive concurrence on Preferred Alt/final mitigation,<br>• Distribute *preliminary* FEIS/Final 4(f)/ROD to agencies.<br>• FEIS/Final 4(f)/ROD Complete | IAWG and electronic document sharing via email or a share site | • January 2020<br>• March 2020<br>• April 2020<br>• June 2020 |
| | Notified Agencies | Notification of FEIS/Final 4(f)/ROD availability. | Letter/email notification, Federal Register notice | • June 2020 |
| | Public | NOA in Federal Register. | Federal Register | • June 2020 |
| | USACE and MDE | • MDE decision on issuance of Nontidal Wetlands and Waterways Authorization(s), including Water Quality Certification,<br>• USACE permit decision made. | Permit | • June 2020 |

Note: In addition to coordination items listed above, MDOT SHA will provide agencies with draft materials electronically for review throughout the study as appropriate. IAWGs will not be open to the public. All dates are subject to change; affected parties will be notified and the Coordination Plan updated.

00057915

**AGENDA**

1. Traffic Modeling conference call- Debriefing

2. Public Outreach-update on July meetings and summer events

3. Logical Termini paper- Discussion of comments

4. Access Discussion

5. 4 Month Schedule- Review of key action items

**Next Meeting:** July 3, 2018

**MDOT SHA/FHWA Coordination Meeting**

August 21, 2018

**Attendees:**
**P3 Team:** Lisa Choplin, Jeff Folden, Caryn Brookman, Karen Kahl, Matt Snare, Jeff Roberta, Chrissy Brandt; **MDOT SHA:** Steve Archer; **FHWA:** Keilyn Perez, Jeanette Mar, Jitesh Parikh

**Section 106 Update**
- Teams are currently working in the field and coordination with MHT and consulting parties is ongoing,
- Completing GAP analysis for what resources need additional evaluation - MHT currently reviewing this analysis
- Completing historic context addendum for post war residential structures (completed until 1960 for previous I-495 project updating until 1968 for this project) - anticipate sending addendum to MHT by mid-September, 30 day review and then consulting party meeting in mid-October with concept of what PA will look like and field work update,
- Draft PA in early 2019, March 2019 will be able to discuss potential eligibility with consulting parties

**Section 4(f) discussion of approach**
- Team has been developing 4(f) approach
- Assuming impact for all parkland – no de minimis requests
- 21 properties (including both historic and park) will require avoidance
- 4(f) outline will be submitted to FHWA for comment next week
- We don't need to coordinate with commission on Fine Arts on this project – not close enough to Woodrow Wilson bridge

**Logical Termini – Follow up from Keilyn's comment**
- MDOT SHA will make requested changes to logical termini paper and will remove the table because it adds confusion with new revisions
- Project limits will be slightly reduced and they will be rolled out to public sometime this fall
- Limits for logical termini will be changed from design limits to area of influence (next interchange up)

**HOV Conversion-Follow up from FHWA HQ Call on 8/9**
- USDOT decision that MDOT SHA can't convert HOV to ETL on I-270
- The Value Pricing Pilot Program (VPP) would not allow FHWA to approve HOV to ETL conversion. The VPP may consider a HOT lane with a discount for HOVs in lieu of free passage.

**Executive Order 13807 – Follow up from FHWA HQ Call w/o 8/13**
- MDOT SHA will be developing permitting time table
- Jeanette will send Caryn a list of fields from permitting database by 8/22 so MDOT SHA can provide appropriate dates*
- 90 day clause in EO is related only to environmental permits
- If agency doesn't have combined FEIS/ROD procedure, FHWA (MDOT SHA will prepare) will have to issue second ROD for those agencies (can be one ROD for all agencies)
- 150 day statute of limitations applies from date of issuance of second ROD
- Can FHWA provide written response to MDOT SHA questions so we have more official response than just FHWA meeting minutes?
- Jeanette will send a letter to federal agencies informing them of one federal decision EO requirement*

00059935

- Will have presentation at October IAWG meeting, set expectations for other agencies etc. – MDOT SHA will prepare presentation and FHWA will review prior to October meeting*

**M-NCPPC Cooperating Agency Status- Discussion of coordination to-date, next steps**

- FHWA will hold M-NCPPC coordination meeting at their office and will provide dates for scheduling purposes*

**Section 404 Conceptual Mitigation- General update on RFP/Traditional Site Search**

- MDOT SHA is meeting with COE/MDE on September 5th
- Team looking at existing mitigation databases and will combine with RFP to private entities to find additional mitigation banks/sites
- Statewide RFP being developed and concept will be presented to COE/MDE at September meeting
- RFP potentially issued in early 2019 and will be for all MDOT SHA mitigation needs

**IAWG Schedule August 2018-January 2019**

- September 28th - field review
- October 10th - present EO issue resolution, IAWG format;
- November 14th - present ARDS with two week review and comment period for agencies
- December 12th - discuss comments on ARDS and revise
- Present final ARDS at January IAWG and request concurrence
- Public workshop to present ARDS in February 2019

*Follow up/Action item

**Next Meeting:** September 11, 2018

Interagency Working Group (IAWG) Meeting No. 6
I-495 & I-270 Managed Lanes Study
MDOT SHA P3 Program Office Classroom
October 17, 2018 @ 10:00 am

**Highlights**

- A presentation was made via PowerPoint by Ms. Caryn Brookman (MDOT SHA), Jeanette Mar (FHWA), and Andrew Bing (Meeting Facilitator).
- Meeting handouts included the agenda and a USDOT One Federal Decision Fact Sheet (attached hereto).
- Meeting Goal: Update IAWG members on study status and reinforce the intent of the IAWG process to successfully meet the accelerated schedule.
- Updates were given on the attendance and common themes from the July Public Workshops.  A summary report will be finalized in November.
- The September 28th field review was well-attended; future field reviews will be scheduled, as needed.
- Executive Order (EO) 13807 (issued August 15, 2017)
  - FHWA gave an overview of the EO content and requirements, including the establishment of "One Federal Decision" (OFD)
  - The I-495 & I-270 Managed Lanes Study is one of two projects currently being held to the provisions of the EO.
  - Implementation guidance is being developed by FHWA Headquarters Office
  - Establishes a goal of 2 years to complete NEPA, and 90 days to receive all final federal authorizations after publication of the Record of Decision (ROD)
    - The 90-day requirement also includes authorizations from state agencies that are needed in order to receive authorization from federal agencies (i.e., the 401 authorization needed from MDE in order to receive the 404 permit from USACE)
    - The Navy added they have not received any guidance on complying with the EO; however, they will meet the requirements of a participating agency.
    - MDE emphasized the importance of the timing of applying for and submitting the JPA, but they do not foresee any timing issues although the MDE does not usually issue the Water Quality Certification before the JPA
    - NCPC said they have approval authority under Capper-Crampton Act and any other improvement on federal lands requires review by their Commission.
  - Permitting Timetable lists all federal and state permit requirements for the project
    - *https://www.permits.performance.gov/*
    - County and local approvals are not required to be listed
    - Property acquisition is a separate process and not included in the permitting timetable and any right-of-way acquisitions would occur post-NEPA
    - There will be meetings with USACE and MDE separately to work though the timeline for applicable permits, including having a Joint Hearing
    - FHWA will look into  the need to include Virginia Commonwealth Board Approval on the timetable, as applicable

- Meeting attendees were asked to confirm if any necessary permits were missing from the PowerPoint slide
- IAWG Purpose and Framework: a reminder and discussion about the intent and purpose of IAWG
  - IAWG establishes an agency working group to facilitate the identification, evaluation and resolution of environmental and regulatory concerns in a collaborative format to inform the EIS and permitting decisions
  - IAWG Goals:
    - Respectfully discuss topics related to development of the EIS and permit applications;
    - Identify and share data sources and resource information;
    - Identify and share regulatory and procedural issues to ensure the established schedule is maintained;
    - Obtain agency comments and cooperating agency concurrence at project milestones.
  - Lead agencies (FHWA and MDOT SHA) – responsible for development of the EIS, including meeting NEPA milestones and ultimately getting an approved FEIS/ROD; coordinate public and agency comments; avoid, minimize and mitigate impacts
  - Cooperating/Participating Agencies (i.e., IAWG members) – identify concerns as they arise; provide active participation; provide comments within their area of expertise
    - Cooperating Agencies additional responsibilities – provide comments within the set timeframes; provide staff support; assume responsibility for preparing portions of the EIS as requested by the lead agency; provide concurrence within the set timeframes
    - Note that the EO states that cooperating agencies have 10 days to concur; this project is following the TERP process, which does not restrict reviews to the 10-day timeframe
    - MDE indicated that providing comments within 10 days should not be an issue given the ongoing communication
  - MDOT SHA indicated that the FEIS and ROD will be a joint document and concurrent with no public comment period on the final; for agencies that do not have a joint FEIS/ROD process, then a separate ROD will be prepared.
  - Proposed schedule includes ARDS in November, ARDS comments from IAWG in December, and IAWG concurrence on the ARDS in January 2020.
- IAWG Protocol:
  1. IAWG participation and attendance is limited to the agency representatives as outlined in the October 2018 Leadership Ladder, as coordinated with each agency.
  2. IAWG members may not speak on behalf of the group (IAWG) or another agency.
  3. Respectful communication is expected to allow for open and honest dialogue.
     - Goal is to facilitate discussion; agencies should freely share comments and ideas without worry that those comments will be leaked to the public
     - Only official written comments will be included in the Administrative Record
  4. Each IAWG meeting will have a stated goal and the discussion will focus on achieving that goal.
  5. Information presented, and any ensuing discussion, is pre-decisional and may not be shared outside of member IAWG agencies or with the public.



**Interagency Working Group**
October 17, 2018

- o IAWG members must be clear about what information can and cannot be shared with other regulatory agencies or the public; if a member is unclear, please ask the leadership team before sharing information with any non-IAWG entity
  - ▪ Information included on the I-495 & I-270 website is considered public and can be shared with others
  - ▪ It is understood that information will be shared within respective agencies and those acting on the agency's behalf (i.e., consultants acting on the agency's behalf)

6. Per the established issue resolution process, every effort will be made to resolve concerns or issues at the IAWG meeting.
   - o Lead agencies request IAWG members proactively participate and bring any issues or concerns to attention immediately
     - ▪ Lead agencies understand that they must make a good faith effort to address issues raised prior to seeking concurrence.

7. Once issues are resolved, concurrence is received, and goals are achieved, they will not be revisited.
   - o The exception to this is if there are changes to the project or new information is made available after a given concurrence is achieved

8. Comments and concerns must be brought to either the IAWG meeting or to lead agencies during the established comment timeframe.
   - o Agency comments provided by email will become part of the Administrative Record and would typically be included in the DEIS

9. ***Cooperating*** IAWG members that cannot provide concurrence at a milestone, must notify FHWA and MDOT SHA at least two weeks ahead of that concurrence milestone.

➢ USACE noted that they believe information is being made available to entities outside of IAWG as they (USACE) are receiving calls from stakeholder groups

➢ USACE further noted that if there is a breach of trust within the IAWG group then the members of the group may feel less inclined to participate openly and the meaningfulness and effectiveness of the open and ongoing dialogue in the IAWG meetings will be diminished or lost and the process will be slowed.

➢ It was reiterated that information should not be shared with entities outside of the IAWG group unless prior permission is requested and received or if the information has already been made available to the public (i.e., information on the project website).

➢ Also noted was the intent / assumption that any information formally requested through the FOIA or PIA process would be reviewed and considered by the agency receiving the request and information provided to the requestor(s), as appropriate.

- **Current Activities and Look Ahead**
  - o Finalizing the July Public Workshops Outreach Summary Report
  - o Applying screening criteria to preliminary range of alternatives to identify the ARDS and refining alternatives per agency and public comments
    - ▪ Screening criteria for the ARDS are still related to the Purpose and Need and have not changed
    - ▪ ARDS to be presented at November 14, 2018 IAWG meeting
    - ▪ IAWG comments on ARDS expected by December 5, 2018

- IAWG ARDS discussion to be held at the December 12, 2018 IAWG meeting
- Final comments due by December 19th to MDOT SHA
- Resubmit revised ARDS package to IAWG members on January 9, 2019
- See verbal and written IAWG concurrence on ARDS January 23, 2019

o Continuing to secure property access to conduct environmental inventory fieldwork

o Finalizing field work to identify environmental resources and confirm existing conditions

o Continuing the Section 106 consultation process
- There will be a consulting parties meeting in November 2018, a follow-up email will be sent with details. *

o Preparing applicable Technical Reports
- A schedule for completion of the Technical Reports will be provided *
- The Technical Reports will not be provided to Cooperating Agencies for review and/or comment.

**Action Items**
- P3 Office will distribute:
  o PowerPoint Presentation and handouts from this meeting
  o Overview of TERP Process
- Summary of post-concurrence Purpose and Need comments and responses will be discussed at the next IAWG meeting.
- Section 106 consulting parties November 2018 meeting details will be provided to the appropriate parties (post the IAWG Meeting, the CP Meeting is scheduled for November 13, 2018)
- Next IAWG scheduled for November 14th at 10:00 at the P3 Office Classroom (601 N. Calvert Street)

**Next Meeting Presentation**
- <u>**November 14, 2018 IAWG**</u> - Present Alternatives Retained for Detailed Study

# Interagency Working Group
## October 17, 2018

**495 270 MANAGED LANES STUDY**

### Attendance

| Name | Agency | Email | Phone |
|---|---|---|---|
| Jeannette Mar | FHWA | Jeannette.Mar@dot.gov | 410-779-7152 |
| Jitesh Parikh | FHWA | Jitesh.Parikh@dot.gov | 410-779-7136 |
| Keilyn Perez | FHWA | Keilyn.Perez@dot.gov | 410-779-7141 |
| Barbara Rudnick (P) | EPA | Rudnick.barbara@epamail.epa.gov | 215-814-3322 |
| Feng Xie (P) | MWCOG | Fxie@mwcog.org | 202-962-3259 |
| Michael Weil (P) | NCPC | michael.weil@ncpc.gov | 202-482-7200 |
| Phillip Neuberg (P) | NIST | phillip.neuberg@nist.gov | 301-975-6940 |
| Laurel Hammig (P) | NPS | laurel_hammig@nps.gov | 202-619-6347 |
| Karrie Freeman | NSA Bethesda | Karrie.reckley@navy.mil | |
| Shawna Lemonds (P) | NSA Bethesda | Shawna.lemonds@navy.mil | |
| Susan Paul | NSA Bethesda | Susan.paul@navy.mil | |
| Joseph DaVia | USACE – Baltimore District | joseph.davia@usace.army.mil | 410-962-5671 |
| Jack Dinne | USACE – Baltimore District | john.j.dinne@usace.army.mil | 410-962-6005 |
| Mickey Sanders (P) | USCG | Mickey.d.sanders2@uscg.mil | 757-398-6587 |
| Raymond Li | USFWS | ray_li@fws.gov | 410-573-4522 |
| Davon Collins (P) | USPS | Davon.m.collins@usps.gov | 202-268-4570 |
| Kristofer Zimmerman (P) | Joint Base Andrews | kristofer.l.zimmerman.ctr@mail.mil | 240-612-0500 |
| Kristy Beard | NMFS | Kristy.beard@noaa.gov | 410-573-4542 |
| Emily Dolbin | MDE | emily.dolbin@maryland.gov | 410-462-7400 |
| Elder Ghigiarelli | MDE | elder.ghigiarelli@maryland.gov | 410-537-3763 |
| Steve Hurt | MDE (McCormick Taylor) | smhurt@mccormicktaylor.com | |
| Tim Tamburrino | MHT | tim.tamburrino@maryland.gov | 410-514-7637 |
| Bihui Xu | MDP | bihui.xu@maryland.gov | 410-767-4567 |
| Steve Archer | MDOT SHA | sarcher@sha.state.md.us | 410-545-8505 |
| Lisa Choplin | MDOT SHA | Lchoplin@sha.state.md.us | 410-637-3320 |
| Jeff Folden | MDOT SHA | jfolden1@sha.state.md.us | 410-637-3321 |
| Matt Snare | MDOT SHA | msnare@sha.state.md.us | 410-545-5640 |
| Caryn Brookman | MDOT SHA | cbrookman@sha.state.md.us | 410-637-3335 |
| Richard Ervin | MDOT SHA | RErvin@sha.state.md.us | 410-545-2878 |
| Gwen Gibson | MES – DNR | Gwendolyn.gibson@maryland.gov | |
| Robert Iosco | VDOT NOVA | robert.iosco@vdot.virginia.gov | 703-259-2764 |
| Matt Harper | M-NCPPC Mo Co. - Parks | Matthew.harper@montgomeryplanning.org | 301-650-4383 |
| Doug Stephens | M-NCPPC Mo Co. - Parks | Douglas.stephens@montgomeryparks.org | 301-650-4367 |
| Chris VanAlstyn (P) | M-NCPPC Mo Co.- Planning | | |
| Andrea Lasker | Prince George's County DPW + T | alasker@co.pg.md.us | |
| Andrew Bossi | MCDOT | andrew.bossi@montgomerycountymd.gov | 240-777-7200 |
| Chris Conklin | MCDOT | christopher.conklin@montgomerycountymd.gov | 240-777-7170 |
| Chrissy Brandt | MDOT SHA | cbrandt@sha.state.md.us | 410-252-7870 |
| Catherine Robbins | Blackwater Env. | catherine@blackwaterenvironmentalgroup.com | 410-252-7870 |
| Stacy Talmadge | Blackwater Env. | stacy@blackwaterenvironmentalgroup.com | 410-252-7870 |
| Andrew Bing | P3 Team (Kramer & Associates) | abing@kramerassociates.net | |
| Karen Kahl | RK&K | kkahl@rkk.com / kkahl@sha.state.md.us | 410-637-3330 |
| Erron Ramsey | RK&K | eramsey@sha.state.md.us | 410-637-3340 |

**(P) = Phone**



Message

| | |
|---|---|
| **From:** | Caryn Brookman [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8379FFD28E5D43249C363DC6CC0E2260-CBROOKMAN] |
| **Sent:** | 12/21/2018 11:54:02 AM |
| **To:** | SHA 495-270-p3 [495-270-p3@sha.state.md.us] |
| **Subject:** | Fw: Air Quality Call with Petra Jacobs 12/21/18 |

**From:** Chrissy Brandt <chrissy@blackwaterenvironmentalgroup.com>
**Sent:** Friday, December 21, 2018 11:45 AM
**To:** Caryn Brookman
**Cc:** Nicholas Krause
**Subject:** Air Quality Call with Petra Jacobs 12/21/18

Good Morning Caryn,
Nick and I participated in a call with Petra Jacobs this morning to discuss some of her questions about the air quality analysis for the project. Ms. Jacobs is concerned about the area around Carderock Elementary School, which is located approximately 110 feet from I-495. She is concerned about the air quality and the effects on the children in the area, specifically particulate matter. Nick explained that we are analyzing CO to help in alternative comparison but are not required to complete an analysis for PM since the area is in attainment of the EPA air quality standards. Ms. Jacobs requested MDOT SHA install an air monitor on the school property to measure the amount of PM that is currently in the air at that location. I told her I would relay the request to the project team and someone would get back to her with an answer. We also discussed the benefits of vegetative screening in that area as well as the shielding effects of a noise barrier, should the area qualify for one. I told her the project team would look into those things as the NEPA process/design of the project progressed.
Thanks!
Chrissy




# WELCOME
## I-495 & I-270 Managed Lanes Study

### Interagency Working Group

April 10, 2019



00064813

 

# Agenda

- Introductions

- Meeting Goal

- Study Updates

- Alternatives Process

- Recommended ARDS

- Interactive Mapping of Environmental Resources

- Next Steps

Pre-decisional and Deliberative

00064814





# Meeting Goal

Discuss the additional analysis conducted on the Screened Alternatives and present the recommended ARDS to inform review of the ARDS paper.



Pre-decisional and Deliberative

00064815




# Study Update

- Screened Alternatives
  - Errata Sheet with comments/responses emailed to agencies on April 4, 2019
- Stakeholder Engagement
  - Held meetings with 15 stakeholder groups since late January (~400 individuals)
  - Held 7 legislative briefings for elected officials
- Spring 2019 Public Workshops
  - Now 8 Public Workshops
  - 4 in Prince George's County and 4 in Montgomery County, 2 of the 8 are on a Saturday
- ARDS Report to be emailed today for review and comment
  - Comments due no later than Wednesday, May 1st

Pre-decisional and Deliberative

00064816





# Alternatives Development



**AGENCY AND PUBLIC INPUT THROUGHOUT SCREENING PROCESS**

Pre-decisional and Deliberative

00064817




# Screening Criteria to get to ARDS


**Accommodate existing traffic and long-term traffic growth**
- System-wide delay
- Corridor travel times and speeds
- Density and level of service

**Enhance travel time reliability**
- Travel time index

**Provide additional roadway travel choice**
- Ability to provide an additional roadway travel choice for users

**Ease of Usage for Travelers**
- Number and complexity of lane operations and access points


**Movement of Goods and Services**
- Improvement in vehicle throughput
- Reduction in local roadway network delay


**Multi-modal Connectivity**
- Ability to enhance connectivity to and between transit facilities
- Ability to provide opportunities for more reliable and efficient transit service


**Homeland Security**
- Ability to provide additional capacity to accommodate a population evacuation and improve emergency response


**Financial Viability**
- Comparison of total traffic volumes (Revenue) to preliminary capital cost estimates (Program Cost)


**Environmental Considerations**
- Preliminary impacts for each ARDS

6

00064818




# Traffic Operations – Methodology

- **Metropolitan Washington Council of Governments (MWCOG) Regional Forecasting Model**
  - Year 2040, Round 9.0 Land Use
- **MDOT SHA Travel Forecasting and Analysis Division (TFAD)**
  - Post-process volumes to develop peak period networks
- **VISSIM Simulation Software**
  - 4-hour AM model (6 AM to 10 AM), 4-hour PM model (3 PM to 7 PM)
  - Existing conditions, 2040 No Build, 2040 Build for 6 Screened Alternatives
- **Evaluate Six Key Metrics**

Pre-decisional and Deliberative

00064819




# Traffic Operations – Metrics

- **System-Wide Delay**

  - Criteria: Accommodate Long-Term Traffic Growth

  - Source: VISSIM

  - Percent decrease in total delay for all vehicles on I-495 and I-270

- **Corridor Travel Time / Average Speed**

  - Criteria: Accommodate Long-Term Traffic Growth

  - Source: VISSIM

  - AM, PM, Inner Loop, Outer Loop, I-270 NB/SB, General Purpose Lanes, HOT/ETLs

8

 

# Traffic Operations – Metrics

- **Travel Time Index (TTI)**
  - Criteria: Trip Reliability
  - Source: VISSIM
  - Peak Travel Time vs. Free-Flow Travel Time; Proxy to Planning Time Index (PTI)
- **Density and Level of Service (LOS)**
  - Criteria: Accommodate Long-Term Traffic Growth
  - Source: VISSIM
  - Percentage of lane-miles failing (LOS F) in design year of 2040

Pre-decisional and Deliberative

00064821





# Traffic Operations – Metrics

- **Throughput**
  - Criteria: Movement of Goods and Services
  - Source: VISSIM
  - Number of vehicles/people that pass a point in a set amount of time
- **Effect on Local Network**
  - Criteria: Movement of Goods and Services
  - Source: MWCOG
  - Daily delay on arterials in Montgomery and Prince George's Counties

Pre-decisional and Deliberative

00064822

# Traffic Operations

Pre-decisional and Deliberative

## CONGESTION RELIEF ON I-495 AND I-270

- Average delay per vehicle quantifies the amount of time motorists are stuck in traffic congestion on the highways within the study area.

- All Build alternatives are projected to reduce delay by 20% or more compared to the No Build condition, as shown below.

| Alternatives | Delay Reduction vs. No Build | |
|---|---|---|
| | AM Peak | PM Peak |
| 2040 No Build | 0% | 0% |
| Alternative 5 | 20% | 22% |
| Alternative 8 | 24% | 33% |
| Alternative 9 | 34% | 33% |
| Alternative 10 | 35% | 35% |
| Alternative 13B | 27% | 22% |
| Alternative 13C | 26% | 35% |

*Source: VISSIM Simulation Model. Values reflect delay in all lanes (GP & HOT/ETL) in the year 2040, and also include interchange ramps and junctions.*

### Legend

- ☐ > 30% decrease in average delay
- ☐ 25% - 30% decrease in average delay
- ☐ 20% - 25% decrease in average delay
- ☐ < 20% decrease in average delay

## REDUCED DELAY ON LOCAL NETWORK

- By serving more traffic on I-495 and I-270, each of the build alternatives are projected to reduce demand on the surrounding local roadway system, resulting in delay savings for local travelers, as shown below.

| Alternatives | Description | % Decrease Daily Delay Local Roads |
|---|---|---|
| Alternative 1 | No Build | 0% |
| Alternative 5 | I-495: 1 HOT Lane<br>I-270: 1 HOT Lane | 3.2% |
| Alternative 8 | I-495: 2 ETLs<br>I-270: 1ETL & 1 HOV | 6.3% |
| Alternative 9 | I-495: 2 HOT Lanes<br>I-270: 2 HOT Lanes | 6.8% |
| Alternative 10 | I-495: 2 ETLs<br>I-270: 2 ETLs & 1 HOV | 6.4% |
| Alternative 13B | I-495: 2 HOT Lanes<br>I-270: 2 Reversible HOT Lanes | 6.3% |
| Alternative 13C | I-495: 2 ETLs<br>I-270: 2 Reversible ETLs & 1 HOV | 6.2% |

*Source: MWCOG Regional Forecasting Model*

### Legend

- ☐ No benefit vs. No Build
- ☐ < 5% reduction in daily delay on local roadway network
- ☐ > 5% reduction in daily delay on local roadway network

# Traffic Operations

Pre-decisional and Deliberative

## MOVING PEOPLE THROUGH THE CORRIDOR

- "Person-throughput" quantifies the efficiency of the roadway network in getting people to their destinations.

- Equals the number of people that pass by a given point on the roadway in a set amount of time.

- Accounts for high-occupancy vehicles and buses.

- Higher numbers are better.

- Benefits of high "person-throughput" on the highway:
  - More efficient use of the roadway.
  - Reduced peak spreading (i.e., less congestion in the off-peak hours).
  - Reduced burden on the surrounding local roadway network (less cut-through traffic).



### % Increase in People Moved vs. 2040 No Build Conditions

**I-270 at Montrose Rd**

| Alt | AM Peak | PM Peak |
|-----|---------|---------|
| 5 | 5% | 0% |
| 8 | 25% | 5% |
| 9 | 10% | 10% |
| 10 | 25% | 25% |
| 13B | 5% | 0% |
| 13C | 15% | 10% |

**American Legion Bridge**

| Alt | AM Peak | PM Peak |
|-----|---------|---------|
| 5 | 15% | 20% |
| 8 | 30% | 20% |
| 9 | 30% | 35% |
| 10 | 30% | 35% |
| 13B | 25% | 30% |
| 13C | 30% | 30% |

**I-495 West of I-95**

| Alt | AM Peak | PM Peak |
|-----|---------|---------|
| 5 | 15% | 25% |
| 8 | 35% | 40% |
| 9 | 40% | 40% |
| 10 | 35% | 40% |
| 13B | 35% | 30% |
| 13C | 40% | 40% |

**I-495 at MD 5**

| Alt | AM Peak | PM Peak |
|-----|---------|---------|
| 5 | 0% | 10% |
| 8 | 25% | 0% |
| 9 | 10% | 15% |
| 10 | 10% | 15% |
| 13B | 15% | 10% |
| 13C | 20% | 15% |

**Legend**

XX%  Highest increase in "person-throughput" per location          XX%  No Benefit compared to 2040 No Build

# Traffic Operations – "My Commute" Tool

Pre-decisional and Deliberative



# Traffic Operations – "My Commute" Tool

Pre-decisional and Deliberative



00064826





# Recommended ARDS

**ALT 1:** No Build (Existing)

All projects in the Financially Constrained Long Range Transportation Plan (CLRP) including I-270 Innovative Congestion Management (ICM) Improvements, Purple Line, Corridor City Transitway BRT, and increased trip capacity and frequency along all MARC lines.

**ALT 5:** 1 HOT Managed Lane

Add one HOT managed lane in each direction on I-495 and convert one existing HOV lane in each direction to a HOT managed lane on I-270



**ALT 8:** 2 ETL Managed Lanes on I-495
1 ETL and 1 HOV Managed Lane on I-270

Add two ETL managed lanes in each direction on I-495 and add one ETL managed lane and retain one HOV lane in each direction on I-270



**ALT 9:** 2 HOT Managed Lanes

Add two HOT managed lanes in each direction on I-495 and convert one existing HOV lane in each direction to a HOT managed lane and add one HOT managed lane in each direction on I-270



**ALT 10:** 2 ETL Managed Lanes and 1 HOV Managed Lane (I-270 only)

Add two ETL managed lanes in each direction on I-495 and on I-270 and retain one existing HOV lane in each direction on I-270 only



**ALT 13B:** 2 HOT Managed Lanes on I-495
2 Reversible HOT Managed Lanes on I-270

Add two HOT managed lanes in each direction on I-495 and convert existing HOV lanes to two HOT managed reversible lanes on I-270 while maintaining General Purpose lanes



**ALT 13C:** 2 ETL Managed Lanes on I-495
Reversible ETL Managed Lane plus 1 HOV Managed lane on I-270

Add two ETL managed lanes in each direction on I-495 and add two managed, reversible ETLs on I-270 while retaining HOV lanes adjacent to General Purpose lanes.



**What are High-Occupancy Toll Lanes (HOT)?**
Dedicated managed lanes within highway rights-of-way that single-occupancy vehicle (SOV) motorists may use by paying a variably priced toll and high-occupancy vehicle (HOV) motorists may use by paying a discounted toll or no toll at all. Toll payments may vary by time of day and level of congestion.

**What are Express Toll Lanes (ETL)?**
Dedicated managed lanes within highway rights-of-way that any motorist, regardless of vehicle occupancy, may use by paying a variably priced toll.

Pre-decisional and Deliberative

00064827





# Alternative 1 –No Build

All projects in the Financially Constrained Long Range Transportation Plan (CLRP) including I-270 Innovative Congestion Management (ICM) Improvements, Purple Line, Corridor Cities Transitway, Bus Rapid Transit, and increased trip capacity and frequency along all MARC lines





- No-Build does **not** meet the purpose and need
- Used as a baseline to compare the results of each build alternative

16    Pre-decisional and Deliberative

00064828





# Alternative 5

Add one HOT managed lane in each direction on I-495 and convert one existing HOV lane in each direction to a HOT managed lane on I-270





- Reduces delay versus the No Build by 20% in AM peak and 22% in PM peak
- Decreases daily delay on local roads by 3.2%
- Average savings per commuter is 45 hours and $900 per year
- Single lane system would be constrained by the slowest moving vehicle, less reliable, and less flexible to adapt to incidents

 Pre-decisional and Deliberative

00064829





# Alternative 8

Add two ETL managed lanes in each direction on I-495 and add one ETL managed lane and retain one HOV lane in each direction on I-270





- Reduces delay versus the No Build by 24% in AM peak and 33% in PM peak

- Decreases daily delay on local roads by 6.3%

- Average savings per commuter is 59 hours and $1,180 per year

- Similar to Alternative 5, a single lane system on I-270 would be constrained by the slowest moving vehicle, less reliable, and less flexible to adapt to incidents

Pre-decisional and Deliberative

00064830





# Alternative 9

Add two HOT managed lanes in each direction on I-495 and convert one existing HOV lane to a HOT managed lane and add one HOT managed lane in each direction on I-270





- Reduces delay versus the No Build by 34% in AM peak and 33% in PM peak
- Decreases daily delay on local roads by 6.8%
- Average savings per commuter is 73 hours and $1,460 per year
- Would allow for passing of slower moving vehicles, be more reliable, and more adaptable to incidents than single lane or reversible alternatives

Pre-decisional and Deliberative

00064831





# Alternative 10

Add two ETL managed lanes in each direction on I-495 and on I-270 and retain one existing HOV lane in each direction on I-270 only





- Reduces delay versus the No Build by 35% in AM peak and 35% in PM peak
- Decreases daily delay on local roads by 6.4%
- Average savings per commuter is 72 hours and $1,440 per year
- Would allow for passing of slower moving vehicles, be more reliable, and more adaptable to incidents than single lane alternatives

Pre-decisional and Deliberative

00064832





# Alternative 13B

**Add two HOT managed lanes in each direction on I-495 and convert existing HOV lanes to two HOT managed reversible lanes on I-270 while maintaining General Purpose lanes**





- Reduces delay versus the No Build by 27% in AM peak and 22% in PM peak
- Decreases daily delay on local roads by 6.3%
- Average savings per commuter is 65 hours and $1,300 per year
- Does not serve demand in off-peak direction of I-270, less flexible to adapt to incidents, and requires downtime for changeovers

Pre-decisional and Deliberative

00064833





# Alternative 13C

Add two ETL managed lanes in each direction on I-495 and add two managed, reversible ETLs on I-270 while retaining HOV lanes adjacent to General Purpose lanes





- Reduces delay versus the No Build by 26% in AM peak and 35% in PM peak
- Decreases daily delay on local roads by 6.2%
- Average savings per commuter is 64 hours and $1,280 per year
- Does not serve demand in off-peak direction of I-270, less flexible to adapt to incidents, and requires downtime for changeovers

22

Pre-decisional and Deliberative

00064834

## Managed Lanes Access Locations

- **A** I-270 at I-370
- **B** I-270 at Gude Drive (South leg only)
- **C** I-270 at Montrose Road
- **D** I-270 at Westlake Terrace (North leg only)
- **E** I-270 at Democracy Boulevard
- **F** I-270 east of Old Georgetown Road
- **G** I-495 at George Washington Parkway
- **H** I-495 north of Clara Barton Parkway
- **I** I-495 at MD 190/Cabin John Parkway
- **J** I-495 at I-270 West Spur
- **K** I-495 west of MD 187
- **L** I-495 at MD 187
- **M** I-495 at I-270 East Spur
- **N** I-495 at MD 185
- **O** I-495 east of MD 185
- **P** I-495 at US 29
- **Q** I-495 at I-95
- **R** I-95/I-495 at US-1
- **S** I-95/I-495 at Cherrywood Lane / Greenbelt Metro
- **T** I-95/I-495 at Baltimore-Washington Parkway
- **U** I-95/I-495 south of Baltimore-Washington Parkway
- **V** I-95/I-495 at US 50
- **W** I-95/I-495 north of Ritchie Marlboro Road
- **X** I-95/I-495 at Ritchie Marlboro Road
- **Y** I-95/I-495 at MD 4
- **Z** I-95/I-495 at MD 5

## Legend

- ● Direct Access Locations
- ● At-Grade Access Locations

The proposed managed lanes access points are based on preliminary traffic and revenue analyses and may change as more detailed analyses are completed.



Confidential, Pre-Decisional, Deliberative

00064835




# Preliminary Financial Analysis

- Alternatives 5, 9, and 13B would provide HOT lanes while Alternatives 8, 10, and 13C would provide ETLs

- Alternative 9 and 10 would have the highest revenue potential, followed by Alternatives 8, 13B, and 13C, with Alternative 5 having the lowest revenue potential

| METRIC | ALTERNATIVE 1 | ALTERNATIVE 5 | ALTERNATIVE 8 | ALTERNATIVE 9 | ALTERNATIVE 10 | ALTERNATIVE 13B | ALTERNATIVE 13C |
|---|---|---|---|---|---|---|---|
| Managed Lanes ADT – I-495[1] | 0 | 26,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| Managed Lanes ADT – I-270[2] | 0 | 24,000 | 22,000 | 37,000 | 36,000 | 23,000 | 19,000 |
| **Managed Lanes ADT – Total** | **0** | **50,000** | **62,000** | **77,000** | **76,000** | **63,000** | **59,000** |
| Managed Lanes ADT as a Percentage of Alternative 9[3] | 0% | 65% | 81% | 100% | 99% | 82% | 77% |
| **Preliminary Capital Cost** (in billions of dollars) | **$0** | **$7.7 - $8.6** | **$8.8 - $9.7** | **$8.7 - $9.6** | **$9.0 - $10.0** | **$8.6 - $9.5** | **$8.9 - $9.9** |
| Capital Cost as a Percentage of Alternative 9[3] | 0% | 88% | 100% | 100% | 103% | 99% | 103% |

[1] Managed Lanes ADT on I-495 is an average value of the ADT along each segment of the I-495 managed lanes between managed lane access points. This corresponds to the estimated number of users per day paying a toll on I-495.
[2] Managed Lanes ADT on I-270 is an average value of the ADT along each segment of the I-270 managed lanes between managed lane access points. This corresponds to the estimated number of users per day paying a toll on I-270.
[3] Alternative 9 was chosen as a basis of comparison for all of the alternatives within the financial viability criterion because it was median cost.

Pre-decisional and Deliberative

00064836

| | Resource | Alternative 1 No Build | Alternative 5 | Alternative 8 | Alternative 9 | Alternative 10 | Alternative 13B | Alternative 13C |
|---|---|---|---|---|---|---|---|---|
| **Environmental** | **Number of Parks** | 0 | 44 | 45 | 45 | 45 | 45 | 45 |
| | **Potential Use of Section 4(f) Properties {Potential Use of historic BW Parkway} (acres)** | 0 | 144 {64} | 150 {64} | 150 {64} | 152 {64} | 149 {64} | 151 {64} |
| | **Number of Known Previously Recorded National Register Historic Properties** | 0 | 25 | 25 | 25 | 25 | 25 | 25 |
| | **100-Year Floodplain (acres)** | 0 | 124 | 127 | 127 | 127 | 127 | 127 |
| | **Unique and Sensitive Areas (acres)** | 0 | 407 | 415 | 415 | 417 | 415 | 416 |
| | **Forest canopy (acres)** | 0 | 1,416 | 1,450 | 1,450 | 1,459 | 1,449 | 1,455 |
| | **Wetlands (acres)** | 0 | 20 | 21 | 21 | 21 | 21 | 21 |
| | **Waters of the US (linear feet)** | 0 | 146,559 | 148,127 | 148,127 | 148,709 | 148,125 | 148,293 |
| | **Noise Receptors Impacted** | 0 | 3,661 | 4,470 | 4,470 | 4,581 | 4,411 | 4,461 |
| **Traffic** | **Annual Average Hours of Savings per Commuter** | 0 | 45 | 59 | 73 | 72 | 65 | 64 |
| **Engineering** | **Total Right-of-way Required (acres)** | 0 | 306 | 339 | 339 | 348 | 339 | 344 |
| | **Number of Properties Directly Effected** | 0 | 1,228 | 1,457 | 1,457 | 1,496 | 1,457 | 1,473 |
| | **Number of Residential Displacements** | 0 | 25 | 34 | 34 | 34 | 34 | 34 |
| | **Number of Business Displacements** | 0 | 4 | 4 | 4 | 4 | 4 | 4 |
| | **Width of Pavement on I-495 (feet)** | 138-146 | 170-174 | 194-198 | 194-198 | 194-198 | 194-198 | 194-198 |
| | **Width of Pavement on I-270 (feet)** | 218-230 | 194-198 | 218-222 | 218-222 | 242-248 | 202-206 | 226-230 |
| | **Capital Costs (billions)** | N/A | $7.7 - $8.6 | $8.7 - $9.7 | $8.7 - $9.6 | $9.0 - $10.0 | $8.6 - $9.5 | $8.9 - $9.9 |

**Notes:**

- All of the alternatives follow the existing highways; therefore, the quantity of impacts is similar
- Detailed analyses, including further avoidance, minimization and private sector incentives, will be prioritized to reduce the property and environmental impacts.
- Preliminary impacts represented above assume total impacts; temporary and permanent impacts will be differentiated in the DEIS.
- Noise receptors are noise sensitive land uses which include residences, schools, places of worship, parks, among others.
- The Air Quality Analysis for the Study is still ongoing. The methodologies and assumptions used in the assessment will be outlined in the DEIS and supporting documentation.

Pre-decisional and Deliberative

00064837




# Environmental Resources

- Environmental resources and limits of disturbance (LODs) for all ARDS will be presented at the Alternatives Public Workshops via hardcopy and interactive mapping

- Webmap Tool will be available at the workshops and online allowing the user to access an aerial-based map where environmental resources and LODs of each recommended ARDS can be viewed.



Pre-decisional and Deliberative

00064838





# Next Steps: Alternatives Screening Process

- **TODAY April 10th (IAWG) -** Present recommended list of ARDS; distribute recommended ARDS paper with traffic, environmental and engineering

- **April 11th** thru **May 16th –** Alternatives Public Workshops

- **May 1st -** Comments due on recommended ARDS paper

- **May 8th (IAWG) -** Present common public comments heard from public workshops held to-date and discuss comments on the recommended list of ARDS

- **June 5th (IAWG) -** Seek verbal and written concurrence on list of ARDS from cooperating agencies (NOTE: 1st Wednesday)

Pre-decisional and Deliberative

00064839





# Next Steps: Spring 2019 Public Workshops

| | |
|---|---|
| **Thursday April 11**th 6:30 to 8:30 PM | • **Prince George's Sports and Learning Complex in Landover** |
| **Saturday, April 13**th 10:00 AM to Noon | • **Thomas Pyle Middle School in Bethesda** |
| **Tuesday, April 23**rd 6:30 to 8:30 PM | • **Eleanor Roosevelt High School in Greenbelt** |
| **Wednesday, April 24**th 6:30 to 8:30 PM | • **Eastern Middle School in Silver Spring** |
| **Thursday, April 25**th 6:30 to 8:30 PM | • **Thomas Wootton High School in Rockville** |
| **Saturday, April 27**th 10:00 AM to Noon | • **Suitland Community Center in Suitland/Silver Hill** |
| **Tuesday, May 14**th 6:30 to 8:30 PM | • **Oxon Hill High School in Oxon Hill** |
| **Thursday, May 16**th 6:30 to 8:30 PM | • **Seneca Valley High School in Germantown** |

*Pre-decisional and Deliberative*

00064840





# Spring 2019 Public Workshop Stations

| Station 1: Study Overview | Station 2: Alternatives Development and Screening Process | Station 3: Traffic Analyses | Station 4: Alternatives Retained for Detailed Study (ARDS) |
|---|---|---|---|

| Station 5: Potential Property Needs | Station 6: Noise | Station 7: Stay Connected |
|---|---|---|

- Stations staffed by study team including technical experts

- Sign language and Spanish language interpreters available at each meeting

- Verbatim recorder available to take verbal comments at each meeting

- Presentation with brief Q&A offered twice at each meeting

Pre-decisional and Deliberative

00064841




# Questions?

Pre-decisional and Deliberative

00064842



# 495 NEXT

**Virginia Department of Transportation**

## NPS – GEORGE WASHINGTON MEMORIAL PARKWAY COORDINATION MEETING

**December 16, 2019**

# Agenda

- **Introductions**

- **Project Status Update**

- **Area of Potential Effect**

- **Potential Noise Barrier D at GWMP Interchange**

- **Updated Preliminary Signing Plan and Responses to NPS Comments**

- **GWMP interchange Southeast Quadrant Impact Minimization**

- **Status of Section 106 Consultation for Virginia Project**

- **Schedule and Next Steps**

 | Virginia Department of Transportation          **2**          

# Project Status Update

- **Current Progress and Milestones**

- **Public Hearing**



 

00076255

# Area of Potential Effect





 

00076256

# Potential Noise Barrier D







00076257

# GW Parkway Signing Options (Butterfly)






00076258

GW Parkway Signing Options (Cantilever)



Virginia Department of Transportation

7



00076259

# Updated Responses to NPS Comments

 

00076260

# GWMP Interchange SE Quadrant Impact Minimization






00076261

# Section 106 Considerations

- **ROW needs and change in impervious surface area -**
  - **Minimal additional roadway pavement needs**
  - **Minimization efforts on roadside impacts have continued since last meeting**
- **General alignment and tie-in of GWMP is not significantly changing**

## *PREVIOUS RAMP ALIGNMENT & LOD*



00076262



| REVISED | STATE | STATE | SHEET NO. |
| | ROUTE | PROJECT | |
| | VA. 495 | 0495-029-419 R-201,C-501 | |

DESIGN FEATURES RELATING TO CONSTRUCTION
OR TO REGULATION AND CONTROL OF TRAFFIC
MAY BE SUBJECT TO CHANGE AS DEEMED
NECESSARY BY THE DEPARTMENT

**GWMP Boundary**

**Existing Park Entrance Sign**

**Limits of cut**

**NORTH**

RFP CONCEPTUAL
PLANS - FOR
INFORMATION ONLY

DATE: 01/17/2020

THESE PLANS ARE UNFINISHED
AND UNAPPROVED AND ARE NOT
TO BE USED FOR ANY TYPE
OF CONSTRUCTION OR THE
ACQUISITION OF RIGHT OF WAY.

PROPOSED RETAINING
WALL LOCATION
(CUT WALL - OPTION 2)

LIMITS OF CONSTRUCTION
(CUT SLOPE - OPTION 2)

LIMITS OF CONSTRUCTION
(CUT SLOPE - OPTION 1)

Virginia Department of Transportation

11

00076263



GWMP Boundary

From INTERSTATE 495

GWMP RAMP G24

GEORGE WASHINGTON MEMORIAL PARKWAY WESTBOUND

GEORGE WASHINGTON MEMORIAL PARKWAY EASTBOUND

PROPOSED RETAINING WALL LOCATION (CUT WALL - OPTION 3)

LIMITS OF CONSTRUCTION (CUT SLOPE - OPTION 3)

LIMITS OF CONSTRUCTION (CUT SLOPE - OPTION 1)

GWMP RAMP G24

**Existing Park Entrance Sign**

**Limits of cut**

GEORGE WASHINGTON

GEORGE WASHINGTON MEMORIA

PROPOSED RETAINING WALL LOCATION (CUT WALL - OPTION 3)

LIMITS OF CONSTRUCTION (CUT SLOPE - OPTION 3)

LIMITS OF CONSTRUCTION (CUT SLOPE - OPTION 1)

NORTH

PROJECT MANAGER : Jim Steinder
SURVEYED BY, DATE : Wm Sunshine 20906 E
DESIGN BY : 986 Engineering
SUBSURFACE UTILITY BY, DATE : R/A

| REVISED | STATE | STATE | | SHEET NO. |
|---|---|---|---|---|
| | ROUTE | PROJECT | | |
| VA. | 495 | 0495-029-419 R-201,C-501 | | |

DESIGN FEATURES RELATING TO CONSTRUCTION OR TO REGULATION AND CONTROL OF TRAFFIC MAY BE SUBJECT TO CHANGE AS DEEMED NECESSARY BY THE DEPARTMENT

RFP CONCEPTUAL PLANS - FOR INFORMATION ONLY

DATE: 01/17/2020

THESE PLANS ARE UNFINISHED AND UNAPPROVED AND ARE NOT TO BE USED FOR ANY TYPE OF CONSTRUCTION OR THE ACQUISITION OF RIGHT OF WAY.

Virginia Department of Transportation

12

| SCALE | PROJECT | SHEET NO. |
|---|---|---|
| 0 50' 100' | 0495-029-419 | |

00076264



GEORGE WASHINGTON MEMORIAL PARKWAY ENTRANCE
OPTIONS 1, 2, AND 3

GWMP Boundary

From
INTERSTATE
495

GWMP RAMP G24

GWMP RAMP G24

Existing Park
Entrance Sign

Limits of cut

SEE INSET BELOW

GEORGE WASHINGTON MEMORIAL PARKWAY WESTBOUND

GEORGE WASHINGTON MEMORIAL PARKWAY EASTBOUND

GEORGE WASHINGTON MEMORIAL

GEORGE WASHINGTON MEMORIA

PROPOSED RETAINING
WALL LOCATION
(CUT WALL - OPTION 2)

LIMITS OF CONSTRUCTION
(OPTION 2)

PROPOSED RETAINING
WALL LOCATION
(CUT WALL - OPTION 3)

LIMITS OF CONSTRUCTION
(OPTION 3)

LIMITS OF CONSTRUCTION
(OPTIONS 2 & 3)

LIMITS OF CONSTRUCTION
(CUT SLOPE - OPTION 1)

NORTH

| REVISED | STATE | | STATE | | SHEET NO. |
|---|---|---|---|---|---|
| | ROUTE | | PROJECT | | |
| | VA. | 495 | 0495-029-4/9 | | |
| | | | R-201,C-501 | | |

DESIGN FEATURES RELATING TO CONSTRUCTION
OR TO REGULATION AND CONTROL OF TRAFFIC
MAY BE SUBJECT TO CHANGE AS DEEMED
NECESSARY BY THE DEPARTMENT

PROJECT MANAGER: Jim Swisher
SURVEYED BY, DATE: Rite Associates 10/26/2007
DESIGN BY: NDR Engineering
SUBSURFACE UTILITY BY, DATE: N/A

RFP CONCEPTUAL
PLANS - FOR
INFORMATION ONLY

DATE: 01/17/2020

THESE PLANS ARE UNFINISHED
AND UNAPPROVED AND ARE NOT
TO BE USED FOR ANY TYPE
OF CONSTRUCTION OR THE
ACQUISITION OF RIGHT OF WAY.

| SCALE | PROJECT | SHEET NO. |
|---|---|---|
| 0 50 100 | 0495-029-4/9 | |

Virginia Department of Transportation

13

00076265



**OPTION 1:**
CUT FILL SLOPE

| Location A-A - VDOT Ramp towards GWMP | Location B-B - Transition from VDOT Ramp to GWMP | Location C-C - GWMP Roadway Section at Entrance |



**OPTION 2:**
PARALLEL RETAINING WALL

| Location A-A - VDOT Ramp towards GWMP | Location B-B - Transition from VDOT Ramp to GWMP | Location C-C - GWMP Roadway Section at Entrance |



**OPTION 3:**
ANGLED RETAINING WALL

| Location A-A - VDOT Ramp towards GWMP | Location B-B - Transition from VDOT Ramp to GWMP | Location C-C - GWMP Roadway Section at Entrance |

 

# Option 1 – 2:1 cut slope





**15**



00076267

# Option 2 – Parallel Retaining Wall



 

00076268

# Option 3 – Angled Retaining Wall










**Potential Viewpoint #1
EB GWMP Looking East**



Potential Viewpoint #2
WB GWMP Looking West



**Potential Viewpoint #3
EB GWMP Looking East**



Potential Viewpoint #4
WB GWMP Looking West

# Section 106 Consultation for Virginia Project





00076275

# Next Steps

- **Receive comments from NPS on options for GWMP entrance treatment**
- **Coordination meeting in January –**
  - **Visualization renderings**
  - **Noise Barrier D updates**
- **Coordination meeting in February –**
  - **Discuss outstanding Section 106 Issues**



Virginia Department of Transportation

24



00076276

# **Questions and Discussion**



Virginia Department of Transportation

**25**



00076277

# GWMP – Existing Conditions: I-495 Entry



 

# Section 106 Considerations – Viewsheds



 | Virginia Department of Transportation



# Potential Minimization and Mitigation

- **Design minimization to optimize reduction in physical project footprint.**

- **Stabilize disturbed areas using a native seed mix as specified by NPS within GWMP. Within VDOT ROW, plant replacement trees in accordance with VDOT standards.**

- **Consolidate / reduce existing I-495 guide signage between Virginia and Maryland on Westbound GWMP.**

- **Locate Virginia toll signing outside of park boundary, closer to decision point.**

- **Consider potential improvements to GWMP sense of arrival:**

  - **Park entrance sign**

  - **Clear difference in "vegetated prism" adjacent to roadway**



Virginia Department of Transportation

28



# Section 106 Considerations

- **ROW needs and change in impervious surface area**
  - **Minimal additional ROW needs**
- **Viewshed**
  - **Setting and Feeling – "Sense of Place and Arrival" – NPS terminology**
  - **View of interchange and new flyover ramps on VDOT ROW – at same level as existing overpass at I-495**
  - **Tree canopy and "prism view" impacts from roadway encroachment on EB sliver take are minimized within park boundaries**
  - **Signing for express lanes tolling**
- **Traffic**
  - **No significant increase in traffic volumes on GWMP with proposed Express Lanes ramp connections**



Virginia Department of Transportation

29



# GWMP Interchange at I-495






00076282

# 106 Considerations –
# Viewshed on westbound GWMP



 

# 106 Considerations –
# Viewshed on westbound GWMP



 

00076284

# 106 Considerations –
# Viewshed on westbound GWMP








**I-270 from I-370 to I-70 Pre-NEPA**
**FHWA Coordination Meeting – March 10, 2020**

**Attendees:**

| | |
|---|---|
| **MDOT SHA:** | Caryn Brookman, Jeff Folden, Lisa Choplin, Jen Rohrer, Andrew Bing, Scott Shifflett, Steve Plano, Shawn Burnett, Mark Lotz, Eric Beightel (phone), Latisha Crawford, Jodie Misiak, Bridey Gallagher |
| **FHWA:** | Jitesh Parikh, Megan Cogburn (phone), Camille Otto (phone) |
| **Handouts:** | Agenda, Purpose & Need Comment Summaries, Purpose and Need Report (with FHWA comments), Purpose and Need Statement (with FHWA comments), Purpose and Need Concurrence Form, I-270 Pre-NEPA Schedule |

1. **Draft Purpose & Need**
   - MDOT SHA received comments from FHWA and IAWG members on the Purpose and Need Report. Each comment was placed into an errata sheet. Response codes were assigned to all comments to indicate how MDOT SHA plans to address each comment in the revised Purpose and Need Report.
   - MDOT SHA noted one comment theme from the IAWG members, particularly NPS and USCOE, was a concern over the potential narrowness of the purpose statement. FHWA requested to review MDOT SHA's draft response.
   - MDOT SHA handed out the Draft Purpose and Need Report with FHWA comments and the corresponding errata sheet with response codes then proceeded to review each of the comments and how they were addressed.
   - One of FHWA's comments was related to the Environmental Responsibility section. FHWA requested clarification on this section within the Report and whether "environmental responsibility" is considered a goal or objective of the project. FHWA requested that the section's intent be clarified.
     - MDOT SHA included this section in the Report as a nod to partner agencies that requested an environmental component be included in the Purpose and Need. It will be clarified that environmental factors will be evaluated during NEPA.
   - MDOT SHA clarified that the Purpose and Need Report reviewed by IAWG members incorporated FHWA's first round of comments; it is the same version reviewed (second round) concurrently with FHWA.
   - MDOT SHA discussed FHWA comments on the Purpose and Need Statement. FHWA requested that the statement paragraphs either have supporting data removed, or be written in a concise manner that drives home the Purpose and Need.
   - MDOT SHA planned to send revised Purpose and Need Report and request FHWA concurrence on Friday, March 20, 2020. However, since FHWA is already scheduled to review Managed Lanes Study DEIS on March 23, 2020, FHWA requested a copy of revised I-270 Purpose and Need by Monday, March 16, 2020 at the latest. MDOT SHA will target to provide the revised documents and errata by this date, and if the team cannot meet that schedule, MDOT SHA will revisit the concurrence schedule (likely pushed back two weeks).

   * MDOT SHA will provide to FHWA the proposed responses to comments received regarding the potential narrowness of the purpose statement.
   *Per direction from FWHA, MDOT SHA will remove the word "Draft" from all documents related to the Purpose and Need for I-270 from I-370 to I-70, and replace with "Pre-NEPA." *Subsequent to this meeting it was determined via coordination with FHWA to refer to the documents as "Purpose and Need Report," "Purpose and Need Statement," and "Purpose and Need Agency Concurrence Form" without a "Draft" or "Pre-NEPA" qualifier.*
   *MDOT SHA will further clarify the Environmental Responsibility section of the Purpose and Need Report per FHWA comments.
   *MDOT SHA will modify the Purpose and Need Statement per FHWA comments.
   *MDOT SHA will provide FHWA with the revised Purpose and Need Report and Purpose and Need Statement, including errata sheet, by Monday, March 16, 2020, or revisit the concurrence schedule.

2. **Upcoming meetings**
   - Transportation ATG #4: MDOT SHA will meet with the Transportation ATG on Thursday, March 12, 2020 to discuss comments received on the Purpose and Need from ATG members (Likely Participating Agencies). *Subsequent to the meeting, FHWA advised they would not be available to participate in the ATG meeting.*
   - Likely Cooperating Agency Meeting: MDOT SHA will meet with the Likely Cooperating Agencies on Thursday, March 19, 2020 to discuss comments received on the Purpose and Need Report and any further concerns these agencies may have.
     - Coming out of the meeting, MDOT SHA hopes to be confident that Likely Cooperating Agencies will provide concurrence with no comments on the Purpose and Need following MDOT SHA's request at the next IAWG Meeting in April.
     - FHWA representatives plan to attend the meeting.
   - The next IAWG Meeting is tentatively scheduled for Thursday, April 2, 2020. MDOT SHA will hold this date and revisit the schedule following the Likely Cooperating Agency Meeting on March 19, 2020.  FHWA requested that the meeting be moved / pushed back a couple weeks to accommodate their schedules

     *FHWA will attend the Likely Cooperating Agency Meeting on Thursday, March 19, 2020.
     *MDOT SHA will consider moving the April 2nd IAWG Meeting to a later date in April.

3. **Logical Termini paper**
   - MDOT SHA is reviewing the Logical Termini paper internally and plans to send to FHWA for review and comment the week of April 6, 2020.

4. **Preliminary Alternatives Identification and Screening Memo**
   - MDOT SHA is reviewing the Preliminary Alternatives Identification and Screening Memo internally and plans to send to FHWA for review and comment the week of April 6.

5. **Proposed Schedule Updates**
   - MDOT SHA provided an updated I-270 Pre-NEPA schedule to FHWA.
   - FHWA asked if the duration for the Public Comment period for the Pre-NEPA Report was 90 days and suggested considering that it could likely be shorter.

The meeting concluded at approximately 11:15 AM.
*Action Items
**Next Meeting:** April 7, 2020 at 10AM.

00117461

Message
_____

**Sent**:           4/3/2020 10:20:27 PM
**To**:             Charlotte Troup Leighton [troupleighton@gmail.com]
**CC**:             Richard Ervin [RErvin@mdot.maryland.gov]
**Subject**:        RE: Moses Hall Cemetery cleanup/meeting
**Attachments**:    Plan_Sheet_Gibson_Grove_Moses_Hall_1961.pdf

Hi Charlotte,

It was great to meet you and the many members of the community dedicated to the Moses Hall and Cemetery on Saturday.  I have been having several conversations on next steps at MDOT SHA, and wanted to give you a brief update – some of this is <u>preliminary</u> direction so please treat it as such. As with all aspects of this project, things are subject to change.

We are in the process of scoping professional detailed archaeological mapping of the cemetery, foundations, and any other surface features (no digging).  We're not sure if this will happen in a couple of phases, we'd like to get out there and map the areas the volunteers cleared as soon as possible before it starts sprouting up and leafing over again.

The bamboo of course is a significant obstacle.  We are investigating ways that MDOT SHA can get out and clear it (and save some muscle strain on your terrific volunteers).  The key issue is that because the property does not have a clear title holder at this point, the <u>state</u> doing invasive work on private land likely requires a legal process of obtaining a court order and posting notice on the property and/or mailing a 30 day notice to the last contact in the tax parcel database. Upon failure to respond we could then proceed with the work.

We would of course have this work done under the supervision of a professional archaeological monitor to ensure the bamboo removal doesn't damage anything.  We're trying to expedite that process as quickly as possible, and can keep you posted on progress.  I know that thicket also does provide some screening to you & other neighbors from the highway so I'm not sure if we can leave a small strip or not (the problem is of course that it will grow back in short order), but we're open to your thoughts on that as we try to get the effort going.

If, as we discussed, you'd like me to come out to your next or future Cabin John Citizens Association meeting, I'd be happy to, just let me know date/details and I can arrange it.

You may also be interested in the attached for your documents file, this is the relevant as-built plan sheet from the 1961 construction of the beltway.  I was pleased to see the state roads commission engineers 60 years ago definitely denoted/delineated the grave boundaries both at Moses Hall and Gibson Grove, and mapped the Hall building.

More information to come, please let me know if you want an update on anything in the interim.

Thanks,

Steve



**From:** Charlotte Troup Leighton <troupleighton@gmail.com>
**Sent:** Thursday, February 27, 2020 6:52 PM
**To:** Steve Archer <SArcher@mdot.maryland.gov>
**Cc:** Richard Ervin <RErvin@mdot.maryland.gov>
**Subject:** Re: Moses Hall Cemetery cleanup/meeting

Mr. Archer,

I know that I speak for the CJCA, as well as the friends of the Cabin John Moses Hall Lodge and Morningstar Cemetery property, when I say that we appreciate your and MDOT SHA's commitment to ensuring a positive outcome for this important historical and cultural treasure. We look forward to welcoming you at our volunteer clean-up day on Saturday, as well as hearing you speak briefly to our group of volunteers about the 495/270 Managed Lane project and MDOT SHA's next steps.

I also appreciate your comments about MDOT SHA's priorities with regard to the protection of cemeteries that might be over and above the 106 process. This is very good to hear. Still, you can imagine the concerns of stakeholders. Since Saturday is certain to be hectic and I work full-time, I want to get some of these concerns down on paper beforehand. My apologies in advance for the lengthy email.

Notwithstanding the many gravesites at the property that will fall within the LOD, the Moses Hall Lodge site looks to be entirely within the LOD on the map you shared. For this reason, we feel compelled to work towards ensuring that the site is identified as "eligible" under Section 106. While the financial resources haven't been there to restore and protect this property over the last 50+ years since the building was destroyed by fire, the cultural and historical significance of Moses Hall Lodge is of great importance to the Cabin John community and descendants of Morningstar Tabernacle #88 members. Sites like Moses Hall offer descendants a sense of pride, belonging, and cultural heritage in our community - a place to point to when sharing family history with the next generation.

I understand the Cultural Resources Technical Report to be an integral part of the 106 and NEPA process. Accordingly, I must share our concerns related to some of the content of this report. The report cites the 2010 UC Berkeley doctoral thesis of Alexandra Jones (copied here), titled "Gibson Grove A.M.E. Zion Church Gone But Not Forgotten: The Archaeology of an African American Church", as a primary research source for information related to the Moses Hall/Gibson Grove properties. However, the report contradicts or paraphrases Dr. Jones' dissertation in places, particularly with reference to the Moses Hall cemetery and lodge site. Here is an example:

In Volume 4, pages 205-206, the Phase I Archaeological Investigation portion of the report states, "Two plots are fenced with low white garden fencing. There are seven known burials within the cemetery dating from around 1921 to 1975. There are three concrete square markers with no writing and only markers with visible writing."

Dr. Jones' dissertation speaks of her visiting the Moses Hall site and finding "approximately 50 graves which we could identify. As we conducted the walking survey there were other graves identified that were hidden under bush and brush. In addition there were newer graves placed on top of older graves." On page 36 of her dissertation, Dr. Jones describes her observations of Moses Lodge cemetery in more detail as follows:

"While surveying the seven head stones were noticeable. These headstones were professional crafted headstones with inscriptions. Yet as we walked deeper into the brush, rows of headstones made from quarry rocks were noticeable. It seems to be about 50 or more grave markers, each in rows with extended the length of the burial ground. At one of the graves, someone had placed a decorative fence around the burial and planted a small rose bush, which had since grown wild from lack of pruning over the years."

On page 53 of Dr. Jones' dissertation, she states the following about the Moses Hall/Morningstar Tabernacle #88 and cemetery:

"Everyone in the African American Cabin John community was a member of Morningstar Tabernacle #88. Each member paid dues and according to the 1904 ledger the members paid a portion of their dues every time they came to the meetings. Members of the lodge were afforded the privilege of being buried in Moses Hall cemetery, which was used from 1912 to 1970. It was not until about the 1930's when the younger generation started to move away that membership became stagnant."

The Cultural Resources Technical Report does not appear to attempt to correct the inconsistencies between the dates the cemetery was in use for burials. Since Moses Hall cemetery was in use into the 1970s, I cannot imagine that state and/or county death and burial records aren't available for at least the interments at the cemetery in the 1960s and 1970s. Every effort should be made to identify remains at the property, including effective mapping approaches such as

ground penetrating radar or photogrammetry. Those more knowledgeable can correct me, but I am told that high-resolution Lidar (not to be confused with photogrammetry or radar) will not provide the kind of detail that will be needed to map cemetery features and remains.

Another significant concern shared by both the Gibson Grove Church and Moses Hall Lodge/Cemetery property stakeholders relate to ongoing erosion. Dr. Jones talks about this in her 2010 dissertation, stating, "The south side of the church has a slope of about 70% making it impossible to survey. The state had built Interstate 495 on the property adjacent to the church, under the claim of eminent domain. During the construction of the interstate the land to the south of the church was graded to create a drain ditch. The hill was graded so steep that over time the south side of the church property had eroded leaving very little area to walk." The state's insufficient approach to stormwater drainage during the Beltway construction continues to threaten adjacent properties and make restoration efforts for Gibson Grove Church and Moses Hall nearly impossible.  We appreciate MDOT SHA's intention to determine appropriate measures to reverse damage to these properties from erosion and stormwater runoff.

I'll stop here and look forward to meeting you and working hard on Saturday.  Thank you again for your continued support.

Kind regards,

Charlotte Troup Leighton

Vice President, Advocacy

Cabin John Citizens Association

On Wed, Feb 26, 2020 at 10:24 AM Steve Archer <SArcher@mdot.maryland.gov> wrote:

Hi Charlotte, other than a location map showing the parcel boundaries of the cemetery (figure 127, attached here), the unredacted report has no additional information related to Moses Hall, the cemetery or Gibson Grove.  It omits archaeological site location information elsewhere in the corridor, and we are required by law to only provide the full unredacted version to certain parties, primarily those with qualified archaeological staff – this is to protect the resources from looting and vandalism.

We definitely appreciate the additional information on the cemetery and will ensure this information is updated; as discussed, there is much more evaluation to be done. You have my commitment we will work with the community to the greatest extent possible to ensure a positive outcome.  I'd be happy to speak to the group briefly about the project and our next steps.

I think discussion will help clarify things – the very short version is that we place a higher importance on anything involving human remains and burials over whether they meet the national register criteria for 106 or not.  We definitely understand that these are peoples' families and ancestors and not just another historic building.  They are outside and above how the cemetery may fit into the 106 process; 106 is important but somewhat of a secondary concern for us here. As an aside, the national register also has some obstacles to finding cemeteries eligible as historic properties – though the obstacles are not insurmountable.

I really appreciate your valuable time and input and look forward to seeing you Saturday.  Again, sometimes these topics are easier to talk through vs. email, so feel free to give me a call if you want to chat before then.

Steve

Steve Archer

Cultural Resources Team Leader

Maryland Department of Transportation State Highway Administration

Environmental Planning Division

707 North Calvert Street

Baltimore, MD 21202

Phone 410-545-8508

sarcher@mdot.maryland.gov


**From:** Charlotte Troup Leighton <troupleighton@gmail.com>
**Sent:** Wednesday, February 26, 2020 9:30 AM
**To:** Steve Archer <SArcher@mdot.maryland.gov>
**Cc:** Richard Ervin <RErvin@mdot.maryland.gov>
**Subject:** Re: Moses Hall Cemetery cleanup/meeting


This information is very helpful, thank you.


A preliminary look at the Cultural Resources Technical Report is a bit concerning. For starters, is it possible to obtain a copy of the unredacted report? It concerns me that redactions are deemed necessary for something like this. In any case, the report indicates that there are "seven known burials within the cemetery dating from around 1921 to 1975. There are three concrete square markers with no writing and only two markers with visible writing." These numbers are woefully inaccurate, which we will be able to demonstrate at the clean-up on Saturday. I believe the "low white garden fencing" referred to in the report (photo attached) are makeshift grave markers that may have been placed there by family members as graves were deteriorating - not fencing intended to surround certain plots.


There are many graves on this property - I've attached nine photos of tombstones or grave markings and there are many more marked and unmarked graves. You should know that many of the relatives of those buried in this cemetery reside in Cabin John and Montgomery County.  A number of these descendants are expected to volunteer on Saturday. In your role as a community liaison for MDOT SHA on this project, I trust that you are aware of the sensitivities surrounding this property. MDOT SHA must do whatever it can to correct the inaccuracies in the Cultural Resources Technical Report. If that includes allocating the money required for adequate archaeological mapping of the site, then I hope that Hogan's administration will do what is right in this case. This property must be treated with all due respect and identified now as a historically eligible site under Section 106.


Should there be an appropriate stopping point on Saturday, it might be a good idea for you to address the group and share MDOT SHA's plans for the property.


Kind regards,

Charlotte Troup Leighton


 **DSCN1688 (1).JPG**

📄 **DSCN1693.JPG**

📄 **DSCN1695.JPG**

📄 **DSCN1699 (1).JPG**

📄 **DSCN1700.JPG**

📄 **DSCN1701 (1).JPG**

📄 **DSCN1705.JPG**

📄 **DSCN1712.JPG**

📄 **DSCN1721 (1).JPG**

On Tue, Feb 25, 2020 at 10:46 AM Steve Archer <SArcher@mdot.maryland.gov> wrote:

Hi Charlotte,

Yes, there are lots of points to discuss.  The Bankheads also expressed concern about the stormwater issues and flooding and one of our next steps is to bring in someone outside of the cultural resources team to discuss that issue, which seems to have a short-term and long-term aspect to it (are there maintenance issues with the existing facilities that can be fixed now vs. what is anticipated with the build of MLS project).

As for the survey, at this point our immediate need is to define what features that can be discerned on the surface are present within the proposed limits of disturbance through conventional mapping.  This is what we would task our consultants to do in the next few weeks.  This will not be the end of our efforts in evaluation and treatment; we'll look at other options including photogrammetry approaches like higher resolution LiDAR survey – this is a kind of radar imaging that can "see through" vegetation and sometimes discern small topographical features like depressions.  However all of the available non-invasive technologies have certain limitations though, none are a 100% guarantee that they locate burials, so we ultimately need to bear that in mind, including putting restrictions and conditions on our future developer on work in sensitive areas, regardless of how much minimization and avoidance we can accomplish before that.

I look forward to discussing more on Saturday, I think more time out there and speaking with you will give me a much better sense of our options for moving forward.  Thanks!


Steve


Steve Archer

Cultural Resources Team Leader

Maryland Department of Transportation State Highway Administration

Environmental Planning Division

707 North Calvert Street

Baltimore, MD 21202

Phone 410-545-8508

sarcher@mdot.maryland.gov


**From:** Charlotte Troup Leighton <troupleighton@gmail.com>
**Sent:** Tuesday, February 25, 2020 9:46 AM
**To:** Steve Archer <SArcher@mdot.maryland.gov>
**Cc:** Richard Ervin <RErvin@mdot.maryland.gov>; SUSAN SHIPP <jsjshipp3@verizon.net>
**Subject:** Re: Moses Hall Cemetery cleanup/meeting


Thank you for sharing the report. I will review the relevant portions before this weekend so that I have a better idea as to questions we might have. As to the consulting party request, I know that Cabin John Citizens Association (CJCA) intends to request same on behalf of Cabin John residents. I had assumed that an individual request wouldn't get very far; however, a few of the many stakeholders should request as Friends of Moses Hall. There are a number of direct descendants of those buried at Moses Hall Morningstar Cemetery who have been working with us and who have a vested interest in the property.


Many of us are greatly concerned about the deteriorating condition of the property and we are well aware that the cemetery and lodge property is at risk for significant, if not total loss, based on the current areas of disturbance proposed for the Managed Lanes. Stormwater runoff from the beltway is already causing significant damage to this historic property. It is my understanding from prior research and correspondence with state and county officials that no one, including the state, has good information on burials that may have been encountered during the construction of the beltway or 270. The period the beltway was constructed predates establishment of the MDOT SHA cultural resources section, and predates laws protecting historic properties (such as the National Historic Preservation Act of 1966). Descendants of Moses Hall and Gibson Grove Church are certain that the construction of the beltway encountered grave sites at the property.


**As to the proposed survey, what exactly is planned? Are we talking about a land survey or some sort of mapping (or both)?** It is our understanding that significant clearing of the site needs to be completed before appropriate archeological mapping, such as photogrammetry mapping -- an approach we feel is necessary due to the age and condition of this historically significant cemetery and lodge site. We recognize that conventional mapping may be

more practical (done with GPS equipment or a total station); however, regardless of the approach, significant clearing will need to be conducted in order to work with where the stones, grave depressions, foundation of the hall, and any other features are clearly visible

With no resources from the county or the state to clear the property in a way that is archeologically appropriate, our volunteers and stakeholders are left to do this work by hand. We are trying to get the clean-up of the site done before the spring bloom. This is a challenging task given limited access for even small equipment, as well as erosion, felled trees, and overgrowth of vegetation. You mention that the "surveying" or "mapping" might be completed within the next several weeks; however, our volunteers are at the mercy of the weather and their availability. Is the state willing to put off the surveying/mapping until late April so that we can make more progress in clearing the site?

Look forward to meeting you on Saturday.

Kind regards,

Charlotte Troup Leighton

Vice President, Advocacy

Cabin John Citizens Association

On Mon, Feb 24, 2020 at 1:10 PM Steve Archer <SArcher@mdot.maryland.gov> wrote:

I will look forward to seeing you Saturday!  I will bring my gloves, rakes, pruners and whatever else that is helpful I can find in my shed.

Either on Saturday, or if you would like to call me before, we can discuss how best to include you as a consulting party in the Section 106 review; typically these consulting parties are organizations rather than individuals (but not always).  If there is something like a "friends of Moses Hall" or cemetery group that would be the most appropriate.  In the meantime, there is a rather large report out, the key to look at is Volume 4, where cemeteries are discussed as resources needing additional evaluation (starting on p. 198):

https://sftp1.mdot.state.md.us/~

Username: SHAredact

Password: p3users1

[Please note, the FTP site works best using google chrome.]

It seems the initial look by our consultants suggested that marked graves were outside the LOD, but from your information and from what Mr. Bankhead said, that may not be the case.  So we need to get a more detailed survey done soon, hopefully in the next several weeks.  As I did with the Bankhead family, I can discuss with you what the next steps for the cemetery treatment would be, but be assured our intent would be first and foremost to avoid, but also to work with the community on respectful approaches to treatment if there are (or may possibly be) interments within the right-of-way, and we definitely have some time on our side to work through the issue, including additional evaluation of archaeology related to Moses Hall outside the cemetery.

Thanks,

Steve

Steve Archer

Cultural Resources Team Leader

Maryland Department of Transportation State Highway Administration

Environmental Planning Division

707 North Calvert Street

Baltimore, MD 21202

Phone 410-545-8508

sarcher@mdot.maryland.gov

**From:** Charlotte Troup Leighton <troupleighton@gmail.com>
**Sent:** Monday, February 24, 2020 9:52 AM
**To:** Steve Archer <SArcher@mdot.maryland.gov>
**Cc:** ebankjs@verizon.net; Mr. Edgar Bankhead Jr., First Agape AME Zion Church <esb@pobox.com>
**Subject:** Re: Moses Hall Cemetery cleanup/meeting

Thank you for reaching out. Of course - we would welcome any and all hands on deck for clean-up day!  We are, of course, pleased and welcome the support of MDOT SHA. I've attached our clean-up day flier.

In our email communication last April, you had indicated that the cemetery would be included in a "gap analysis" that outlined cultural resources evaluation needs for the Managed Lanes Study. You also mentioned that cemeteries fall into a "gray area" as potential national register historic properties, which left all of us very concerned about the property. At the time, you indicated that MDOT SHA had conducted an initial field visit and would be including recommendations for treatment in your cultural resources technical report expected in late 2019.  Was this report released? There appear to be marked and unmarked graves, as well as the Moses Hall Lodge site, within the proposed limits of disturbance. I am certain that all stakeholders will be pleased to hear that MDOT SHA intends to conduct archeologically appropriate mapping and surveying of the property. Do you know when this will be happening?

By the way, I don't think the P3 team has updated the online mapping to properly indicate the presence of the cemetery.

See you Saturday!

Kind regards,

Charlotte Troup Leighton

Vice President, Advocacy

Cabin John Citizens Association (CJCA)

On Mon, Feb 24, 2020 at 9:26 AM Steve Archer <SArcher@mdot.maryland.gov> wrote:

Good morning Ms. Leighton,

Our MDOT SHA team met last week with Reverend and Mr. Eddie Bankhead to discuss the Gibson Grove Church and the related resources of Moses Hall and the cemetery.

They mentioned there was a community cleanup happening on Saturday, and I offered to volunteer with the cleanup; I think this would be a good way to ensure the lines of communication are open with MDOT SHA about potential impacts and making sure we treat the resources respectfully.  One of our next steps is also to do a more detailed (non-invasive) survey and mapping exercise of the right-of-way-line and any surface evidence of Moses Hall and  graves such as field stones or depressions.  At any rate I would be happy to get my hands dirty and help with the effort on Saturday if you are amenable – please let me know if that is OK and any logistics I would need to be aware of.  Feel free to email me or call, thank you.

Steve

Steve Archer

Cultural Resources Team Leader

Maryland Department of Transportation State Highway Administration

Environmental Planning Division

707 North Calvert Street

Baltimore, MD 21202

Phone 410-545-8508

sarcher@mdot.maryland.gov

Governor Hogan is committed to outstanding customer service. Tell us how we are doing. Click here.

Maryland now features 511 traveler information!
Call 511 or visit: www.md511.org

 Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.

'Aunt Emma' Jones Dies at Cabin John
*The Washington Post (1923-1954)*, Jun 30, 1936; ProQuest Historical Newspapers: The Washington Post
pg. X26

# 'Aunt Emma' Jones Dies at Cabin John

"Aunt Emma" Jones, 76-year-old colored mid-wife who for 21 years was nurse and housekeeper for Clara Barton, founder of the American Red Cross, died Sunday at her home near Cabin John, Md.

One of the most picturesque characters in Montgomery County, she traveled in horse and buggy on her errands of mercy. She brought hundreds of children into the world and was one of the few midwives not required to take an examination when Maryland adopted a law making it compulsory for midwives to take a test to show their medical competence.

She is survived by three daughters and three sons.

Funeral services will be held tomorrow at Gibson Grove Church and burial will follow in Moses Cemetery.

Reproduced with permission of the copyright owner.  Further reproduction prohibited without permission.

00118985



**I-270 from I-370 to I-70 Pre-NEPA**
**FHWA Coordination Meeting – April 21, 2020**

**Attendees:**

**MDOT SHA:** Caryn Brookman, Jeff Folden, Lisa Choplin, Jen Rohrer, Andrew Bing, Scott Shifflett, Steve Plano, Shawn Burnett, Mark Lotz, Eric Beightel, Latisha Crawford, Jodie Misiak, Bridey Gallagher

**FHWA:** Jitesh Parikh, Megan Cogburn, Camille Otto

**Handouts:** Agenda

1. **Purpose & Need (P&N)**
   - MDOT SHA received concurrence from all likely Cooperating Agencies (only two of which had minor comments) on the P&N. MDOT SHA is preparing an errata sheet which will provide responses to all comments received from commenting agencies on the P&N Report.
     * MDOT SHA will provide errata to FHWA once it is complete.

2. **Alternatives Identification and Screening Approach Memo**
   - This document outlines the process used to identify the alternatives to be screened during Pre-NEPA and the screening criteria to assess the preliminary range of alternatives that will be carried into NEPA. MDOT SHA is reviewing this memo internally.
     * MDOT SHA will provide the Alts Memo to FHWA once it is complete.

3. **Logical Termini Memo**
   - MDOT SHA is cognizant of concerns with independent utility and the procurement approach. Since NEPA is independent of procurement, MDOT SHA is confident in the logical termini as summarized in a memo. The memo addressing FHWA's comments is currently under MDOT SHA internal review.
     * MDOT SHA will provide the Logical Termini Memo to FHWA once it is complete.

4. **NEPA Document Classification**
   - MDOT SHA discussed the NEPA Document Classification with FHWA and whether NEPA will be captured as an Environmental Assessment or an Environmental Impact Statement (EIS). The intent of the Pre-NEPA Report is to include the identified Class of Action, in order to set up initiation of NEPA. Mr. Parikh (FHWA) suggested a memo with support on the MDOT SHA recommended document classification be prepared for FHWA review.

5. **Prior Concurrence**
   - MDOT SHA asked for clarification on FHWA Prior Concurrence and what that entails for a project. FHWA stated that Prior Concurrence is required from FHWA Headquarters, rather than the Division Office. Prior Concurrence, per the regulations, is required for the Final EIS under One Federal Decision (OFD), but additional Prior Concurrences of the Draft EIS, Alternatives Retained for Detailed Study, and/or Technical Reports will likely be requested. FHWA Headquarters will require coordination with FHWA Division office and MDOT SHA to make the final decision regarding Prior Concurrence.

6. **Schedule / Upcoming Meetings**
   - MDOT SHA revised the public involvement approach. An online presentation is anticipated to accompany the release of the Pre-NEPA Report at the end of August 2020.
   - Upcoming Meetings include:
     - Natural Resources Agency Technical Group – Wednesday, May 20, 9-11AM
     - Parks Agency Technical Group – Thursday, May 21, 9-11AM
     - Transportation Agency Technical Group – TBD
     - IAWG Meeting – Wednesday, May 27, 9-11AM



The meeting concluded at approximately 10:30AM.
*Action Items
**Next Meeting:** May 5, 2020 at 10AM.

Confidential, Deliberative and Pre-Decisional

00119297

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION III**
**1650 Arch Street**
**Philadelphia, Pennsylvania 19103**

**DATE:**

**SUBJECT:**     Technical Support Document for the Review of the 1997 8-Hour Ozone National
Ambient Air Quality Standard (NAAQS), 2008 8-Hour Ozone NAAQS, and the
2015 8-Hour Ozone NAAQS Conformity Determinations for the Visualize 2045
Long Range Transportation Plan (LRTP) and the Fiscal Year (FY) 2021-2024
Transportation Improvement Program (TIP) for the Metropolitan Washington
Region

**FROM:**     Gregory A. Becoat GREGORY BECOAT *Digitally signed by GREGORY BECOAT Date: 2020.05.05 08:52:54 -04'00'*
Planning & Implementation Branch (3AD30)

**TO:**     Administrative Record of the Environmental Protection Agency (EPA) Review of
the 1997 8-Hour Ozone National Ambient Air Quality Standard (NAAQS), 2008
8-Hour Ozone NAAQS, and the 2015 8-Hour Ozone NAAQS Conformity
Determinations for the Visualize 2045 Long Range Transportation Plan (LRTP)
and the Fiscal Year (FY) 2021-2024 Transportation Improvement Program (TIP)
for the Metropolitan Washington Region

**THRU:**     Susan I. Spielberger, Chief SUSAN SPIELBERGER *Digitally signed by SUSAN SPIELBERGER Date: 2020.05.05 09:39:26 -04'00'*
Planning & Implementation Branch (3AD30)

**I. Background**

The purpose of this document is to review the 1997 8-hour ozone NAAQS, 2008 8-hour ozone
NAAQS, and the 2015 8-hour ozone NAAQS Conformity Determinations of the FY 2021-2024
TIP and Visualize 2045 LRTP as prepared by the Metropolitan Washington Council of
Governments, National Capital Region Transportation Planning Board (TPB). The purpose is to
determine whether or not the conformity determinations meet the requirements of the Clean Air
Act (CAA) and the applicable regulations promulgated thereunder at 40 CFR part 93. On April
24, 2020, EPA Region III received the Metropolitan Washington Region FY 2021-2024 TIP and
Visualize 2045 LRTP conformity determinations from the District of Columbia Division of the
United States Federal Highway Administration (FHWA).

The amendments to the FY 2021-2024 TIP and Visualize 2045 LRTP were completed in order to
demonstrate that mobile source emissions for each analysis year of the long-range plan, adhere to

1

00131349

all nitrogen oxides ($NO_x$) and volatile organic compounds (VOCs) emissions budgets. The conformity determination was reviewed in accordance with the procedures and criteria of the Transportation Conformity Rule contained in 40 CFR part 93, sections 93.106, 93.108, 93.110, 93.111, 93.112, 93.113(b) and (c), and 93.118.

Transportation conformity is required under section 176(c) of the CAA to ensure that federally supported highway and transit projects, and other activities are consistent with (conform to) the purpose of the state implementation plan (SIP). The CAA requires federal actions in nonattainment and maintenance areas to "conform to" the goals of the SIP. This means that such actions will not cause or contribute to violations of a NAAQS; worsen the severity of an existing violation; or delay timely attainment of any NAAQS or any interim milestone. Actions involving FHWA or Federal Transit Administration (FTA) funding or approval are subject to the Transportation Conformity Rule (40 CFR part 93, subpart A). Under this rule, metropolitan planning organizations (MPOs) in nonattainment and maintenance areas coordinate with state air quality and transportation agencies (EPA, FHWA, and FTA) to demonstrate that their metropolitan transportation plans and TIPs conform to applicable SIPs. This is typically determined by showing that estimated emissions from existing and planned highway and transit systems are less than or equal to the motor vehicle emission budgets (MVEBs) contained in a SIP.

For the 1997 8-hour ozone NAAQS, EPA designated the Washington, DC-MD-VA as a moderate nonattainment area (April 30, 2004, 69 FR 23858). On February 7, 2013, EPA found adequate the 2009 Attainment and 2010 Contingency budgets included in the 2007 SIP, and the TPB was subsequently required to use those budgets to meet conformity requirements. These budgets were used to assess conformity of the Washington region's transportation plans from 2013 through 2017.

For the 2008 8-hour ozone NAAQS, EPA designated the Washington, DC-MD-VA as a marginal nonattainment area on May 21, 2012 (77 FR 30088) with an effective date of July 20, 2012. For the 2015 8-hour ozone NAAQS, EPA designated the Washington, DC-MD-VA Area as a marginal nonattainment area on June 4, 2018 (83 FR 25776) with an effective date of August 3, 2018. The Washington Area currently has MVEBs for the 2008 8-hour ozone NAAQS. On August 8, 2018, EPA found that the 2014, 2025, and 2030 MVEBs for the ozone precursors NOx and VOCs contained in the maintenance plan for the Washington, DC–MD–VA 2008 8-hour ozone NAAQS nonattainment area are adequate for conformity purposes. As a result of EPA's finding, the Metropolitan Washington Region must use the NOx and VOC MVEBs from the submitted maintenance plan in future conformity determinations. The maintenance plan includes two sets of NOx and VOC MVEBs, shown in Table 1 and Table 2 below. The MVEBs shown in Table 1 will be the applicable motor vehicle emissions budgets for this transportation conformity determination. The MVEBs shown in Table 2 add a twenty percent (20%) transportation buffer to the mobile emissions inventory projections for NOx and VOC in 2025 and 2030. The MVEBs shown in Table 2 that include a transportation buffer will be used only as needed in situations where the conformity analysis must be based on different data, models, or planning assumptions, including, but not limited to, updates to demographic, land use, or project-related assumptions, than were used to create the first set of MVEBs in the maintenance plan (Table 1). The technical

2

aalyses used to demonstrate compliance with the MVEBs and the need, if any, to use transportation buffers will be fully documented in the conformity analysis and follow the TPB's interagency consultation procedures.

**Table 1: Tier 1 Mobile Budgets for the Metropolitan Washington Region.[1]**

| Year | NOx On-Road Emissions tons per day (tpd) | VOC On-Road Emissions (tpd) |
|---|---|---|
| Attainment Year 2014 Emissions & Budget | 136.8 | 61.3 |
| Intermediate Year 2025 Emission & Budget | 40.7 | 33.2 |
| Final Year 2030 Emission & Budget | 27.4 | 24.1 |

**Table 2: Tier 2 Mobile Budgets for the Metropolitan Washington Region.[1]**

| Year | NOx On-Road Emissions (tpd) | VOC On-Road Emissions (tpd) |
|---|---|---|
| **Attainment Year 2014 Emissions & Budget** | **136.8** | **61.3** |
| Predicted 2025 Emission | 40.7 | 33.2 |
| Transportation Buffer | 8.1 | 6.6 |
| **Intermediate Year 2025 Budget** | **48.8** | **39.8** |
| Predicted 2030 Emission | 27.4 | 24.1 |
| Transportation Buffer | 5.5 | 4.8 |
| **Final Year 2030 Budget** | **32.9** | **28.9** |

On December 17, 2004, EPA designated the Washington, DC-MD-VA Area as a nonattainment area for the 1997 annual particulate matter ($PM_{2.5}$) NAAQS. On January 12, 2009 (74 FR 1146), EPA determined that the entire Washington Area had attained the 1997 annual $PM_{2.5}$ standard, based on ambient air quality monitoring data. The District Department of the Environment (DDOE), the Maryland Department of the Environment (MDE), and the Virginia Department of Environmental Quality (VADEQ) submitted a redesignation request and maintenance plan on the following dates: June 3, 2013 (DDOE & VADEQ), and July 10, 2013 (MDE). On October 6, 2014 (79 FR 60081), EPA approved the maintenance plan which was developed by DC, Maryland, and Virginia which included MVEBs for years 2017 and 2025 for $NO_x$ and $PM_{2.5.}$ The MVEBs for 2017 are 41,709 tons/year of $NO_x$ and 1,787 tons/year of $PM_{2.5}$. The MVEBs for 2025 are 27,400 tons/year of $NO_x$ and 1,350 tons/year of $PM_{2.5}$. On August 24, 2016 (81 FR 58010), EPA published a final rulemaking notice revoking the 1997 annual $PM_{2.5}$ NAAQS for transportation conformity purposes, effective October 24, 2016. As of October 24, 2016, the TPB no longer needs to demonstrate conformity to the 1997 annual $PM_{2.5}$ NAAQS.

---

[1] The MVEBS with transportation buffers will be used only as needed in situations where the conformity analysis must be based on different data, models, or planning assumptions, including but not limited to updates to demographic, land use, or project-related assumptions, than were used to create the first set of MVEBs in the maintenance plan.

00131351

Currently, the Washington, DC-MD-VA Area is attaining the carbon monoxide (CO) NAAQS and submitted a ten-year maintenance plan with MVEBs covering the period 1996-2007. EPA approved the maintenance plan and the associated MVEBs effective March 16, 1996 (January 30, 1996, 96 FR 1104). The Washington, DC-MD-VA Area submitted the required revised second ten-year maintenance plan with MVEBs covering through March 2016. EPA approved the second 10-year maintenance plan and MVEBs on April 4, 2005 (70 FR 16958); consequently, after March 2016, the TPB no longer needs to demonstrate conformity to the CO NAAQS.

## II. Review of the MOVES2014b Modeling Completed for the Air Quality Conformity Determinations

To run the MOVES2014b model, a run specification (hereafter referred to as "RunSpec") must be created so that appropriate parameters are selected for the modeling run. The RunSpecs were reviewed against the following EPA guidance document: "MOVES2014 and 2014a Technical Guidance: Using MOVES to Prepare Emissions Inventories for State Implementation Plans and Transportation Conformity" (EPA's MOVES2014 guidance). This document provides guidance on the use of the MOVES model to develop inventories for SIPs as well as analysis of emissions for transportation conformity determinations.

TPB submitted emissions analyses for the years 2019, 2021, 2025, 2030, 2040, and 2045. MOVES2014b was utilized to produce emissions for each of the years and NAAQS analyzed. Table 1 presents the parameters that were reviewed for the RunSpec and each parameter's respective component in the submittal. The RunSpec parameters only differ in the selection of the county for each NAAQS; therefore, Table 3 presents the selections made for all counties for the Ozone NAAQS and $PM_{2.5}$ NAAQS. The RunSpec for the years 2019, 2021, 2025, 2030, 2040, and 2045 were reviewed and found to have followed applicable EPA guidance provided in EPA's MOVES2014 guidance.

| Table 3. RunSpec Reviews for the Ozone NAAQS for Years 2019, 2021, 2025, 2030, 2040, and 2045 for the Metropolitan Washington Region. | |
|---|---|
| Domain/Scale | County scale was selected. This is acceptable for the regional emissions analyses. |
| Calculation Type | Inventory was selected which is acceptable for a regional emissions analysis. |
| Time Aggregation Level | Hour was selected. Selection of hourly time aggregation level is necessary for regional emissions analyses. |
| Calendar Year of Evaluation | The appropriate calendar year was selected for each RunSpec. MOVES2014b can model years 1990 and 1999-2050. |
| Month of Evaluation | July was selected to represent a typical summer month. |
| Type of Day of Evaluation | Weekdays were selected. |
| Hours of Evaluation | Starting and ending hours create a whole day (from 0-24 hours). |
| Geographic Bounds | The appropriate county was selected for each run. |

4

00131352

| Vehicles/Equipment: On-Road Vehicle Equipment | Appropriate combinations of fuels and source use types were made. |
| Road Type | Selection included all necessary road types. |
| Pollutants and Processes | $NO_x$, non-methane hydrocarbons, total gaseous hydrocarbons, and VOCs were selected. |
| On-Road Retrofits | N/A |
| Rate of Progress (ROP) | N/A |
| Output Database/Unit Selection | Mass units selected to be grams; energy units selected to be million British Thermal Units (BTU); distance units selected to be miles. |
| Output Emission Detail in Emission Rate Calculations | Emission detail was selected via user preference which is acceptable because user preference does not affect the modeling outcome. |
| Advanced Performance Features | N/A |

## III. EPA's Evaluation

For MVEBs to be approvable, they must meet, at a minimum, EPA's adequacy criteria found at 40 CFR 93.118(e)(4). EPA's adequacy criteria are: (1) the submitted control strategy implementation plan was endorsed by the Governor or designee and was subject to a state public hearing; (2) consultation among federal, state, and local agencies occurred; full implementation plan documentation was provided to EPA; and EPA's stated concerns, if any, were addressed before the control strategy implementation plan was submitted; (3) the MVEBs are clearly identified and precisely quantified; (4) the MVEBs, when considered together with all other emissions sources, are consistent with applicable requirements for maintenance; (5) the MVEBs are consistent with and clearly related to the emissions inventory and the control measures in the submitted control strategy implementation plan; and (6) revisions to previously submitted maintenance plans explain and document any changes to previously submitted budgets and control measures, impacts on point and area source emissions, any changes to established safety margins, and reasons for the changes (including the basis for any changes related to emission factors or estimates of vehicle miles traveled).

For all areas where transportation conformity applies, Table 1 – Conformity Criteria, found in 40 CFR 93.109(b), lists the conformity criteria that apply for transportation plans, TIPs, and projects in 40 CFR 93.110 through 93.119. A transportation plan or TIP conformity determination must include a regional emissions analysis that meets the requirements of 40 CFR 93.122. This regional emissions analysis must use the latest planning assumptions (40 CFR 93.110); use the latest emissions model (40 CFR 93.111); and pass the appropriate conformity test – the budget test and/or the interim emissions test(s) (40 CFR 93.118 and 93.119). In addition, other requirements must be met and documented in the transportation plan and TIP conformity determination including interagency consultation and public participation (40 CFR 93.112) and timely implementation of Transportation Control Measures (TCMs) in approved SIPs (40 CFR 93.113).

5

Table 4 below demonstrates how the document prepared by TPB MPO satisfies the requirements for conformity determinations.

| Table 4.  EPA's Evaluation of the Conformity Determination of the Plan Submitted by the District of Columbia Division Office of the Federal Highway Administration on Behalf of TPB to EPA on April 24, 2020. | | | |
|---|---|---|---|
| CRITERIA APPLICABLE TO PLAN AND/OR TIP | | | |
| SECTION OF 40 CFR PART 93 | CRITERIA | Y/N | COMMENTS |
| 93.106(a)(1) | Are the horizon years correct? | Y | The years chosen for the 1997 8-hour ozone NAAQS, 2008 8-hour ozone NAAQS, and 2015 8-hour ozone NAAQS conformity analyses are appropriate horizon years based on 40 CFR 93.118 (Criteria and procedures: Motor vehicle emissions budget). |
| 93.106(a)(2)(i) | Does the plan quantify and document the demographic and employment factors influencing transportation demand? | Y | The conformity determination summarized: population, employment, and household data for the Metropolitan Washington, DC area which was utilized in this analysis.  These forecasts were based upon the Cooperative Forecasts Round 9.1a. |
| 93.106(a)(2)(ii) | Is the highway and transit system adequately described in terms of the regionally significant additions or modifications to the existing transportation network which the transportation plan envisions to be operational in the horizon years? | Y | Appendix B of the Air Quality Conformity Analysis document includes regionally significant additions or modification projects.  The project list includes transit, highway, and high occupancy vehicle (HOV)/high occupancy toll (HOT) projects. |
| 93.108 | Is the transportation plan fiscally constrained? | Y | EPA is deferring to TPB and the State of Maryland, the Commonwealth of Virginia, and the District of Columbia transportation agencies who have determined that the plan is fiscally constrained. |

6

00131354

| 93.110 | Is the conformity determination based upon the latest planning assumptions? | | |
|---|---|---|---|
| | (a)  Is the conformity determination, with respect to all other applicable criteria in 40 CFR §§93.111 - 93.119, based upon the most recent planning assumptions in force at the time of the conformity determination? | Y | (a & b) The latest planning assumptions have been utilized. The latest planning assumptions include the Cooperative Forecasts Round 9.1a, which includes forecasts for population and employment data.  The latest travel time changes were used in the travel demand model version 2.3.78. |
| | (b) Are the assumptions derived from the estimates of current and future population, employment, travel, and congestion most recently developed by the MPO or other designated agency and is the conformity based upon the latest assumptions about current and future background concentrations? | | |
| | (c) Are any changes in the transit operating policies (including fares and service levels) and assumed transit ridership discussed in the determination? | Y | (c) Charges made by each transit provider as well as updated charges were used for future analyses and are located in Appendix B of the conformity document. |
| | (d) Does the conformity determination include reasonable assumptions about transit service and increases in transit fares and road and bridge tolls over time? | Y | (d) Reasonable assumptions are discussed in Appendix B of the conformity determination document |
| | (e)  Does the conformity determination use the latest existing information regarding the effectiveness of Transportation Control Measures (TCMs) and other implementation plan measures which have already been implemented? | Y | (e) All of the TCMs listed in the 1-hour and 8-hour ozone SIPs for the Metropolitan Washington, DC area were implemented.  The latest information regarding TCMs and other implementation plan measures effectiveness has been used. |

7

00131355

| | (f) Are key assumptions specified and included in the draft documents and supporting materials used for the interagency and public consultation required by 40 CFR §93.105? | Y | (f) Supporting documents are provided in the conformity determination document. This document was available for interagency consultation and public consultation. |
|---|---|---|---|
| 93.111 | Is the conformity determination based upon the latest emissions model? | Y | This conformity determination used MOVES2014b, which is the latest emissions model. |
| 93.112 | Did the MPO make the conformity determination according to the consultation procedures of the conformity rule or the state's conformity SIP? | Y | Consultation procedures were followed in accordance with the TPB consultation procedures. These procedures are based on the procedures of the state conformity SIP. **Interagency Consultation:** The TPB has consulted with all appropriate agencies. This includes the District of Columbia Department of the Environment, Maryland Department of the Environment, Maryland Department of Transportation, Maryland Office of Planning, Virginia Department of Environmental Quality, Virginia Department of Transportation, Federal Highway Administration, EPA, and county representatives of the counties of the Metropolitan Washington, DC area. **Public Consultation:** The TPB has provided opportunities for public comment on the Conformity Determination. On January 31, 2020, the TPB released for public comment for 30 days, the draft air conformity analysis for the TIP and CLRP. On March 18, 2020, the TPB responded to comments received during the public comment period and approved the air quality conformity analysis of the Visualize 2045 plan and FY 2021-2024 TIP. |
| 93.113(b) and 93.113(c) | Are TCM's being implemented in a timely manner. | Y | All the TCMs listed in the 1-hour and 8-hour ozone SIPs for the Metropolitan Washington, DC area were implemented. The latest information regarding TCMs and other implementation plan measures effectiveness has been used. |

8

| | | | |
|---|---|---|---|
| | | | Documentation regarding the timely implementation of each project was included as Attachment G of the Conformity Analysis document. |
| 93.118 | For areas with SIP Budgets: Does the Transportation Plan and/or TIP meet the required emission reduction test? | Y | On August 8, 2018, EPA declared adequate the mobile emissions budgets for the years 2014, 2025, and 2030 MVEBs for the ozone precursors $NO_x$ and VOCs contained in the maintenance plan for the Washington, DC–MD–VA 2008 8-hour ozone NAAQS. Therefore, these mobile budgets are the applicable budgets to be used in the conformity determinations for the 1997 8-hour ozone NAAQS, 2008 8-hour ozone NAAQS, and the 2015 8-hour ozone NAAQS and are in tons/day (tpd). |

2014 Budgets:          2019 Analysis:
61.3 tpd (VOC)        42.9 tpd (VOC)
136.8 tpd ($NO_x$)        76.0 tpd ($NO_x$)

2014 Budgets:          2021 Analysis:
61.3 tpd (VOC)        38.4 tpd (VOC)
136.8 tpd ($NO_x$)        61.2 tpd ($NO_x$)

2025 Budgets:          2025 Analysis:
39.8 tpd (VOC)        34.2 tpd (VOC)
48.8 tpd ($NO_x$)         42.5 tpd ($NO_x$)

2030 Budgets:          2030 Analysis:
28.9 tpd (VOC)        24.2 tpd (VOC)
32.9 tpd ($NO_x$)         27.8 tpd ($NO_x$)

2030 Budgets:          2040 Analysis:
28.9 tpd (VOC)        18.2 tpd (VOC)
32.9 tpd ($NO_x$)         19.1 tpd ($NO_x$)

2030 Budgets:          2045 Analysis:
28.9 tpd (VOC)        18.3 tpd (VOC)
32.9 tpd ($NO_x$)         19.4 tpd ($NO_x$)

The transportation plan and TIP meet the emission reduction test because the MVEBs for the analysis years 2019, 2021, 2025, 2030, 2040, and 2045 are lower than the applicable SIP approved MVEBs.

## IV.  CONCLUSION

Pursuant to FHWA's April 24, 2020 request, EPA has reviewed the 1997 8-hour ozone NAAQS, 2008 8-hour ozone NAAQS, and the 2015 8-hour ozone NAAQS conformity determinations for the FY 2021-2024 TIP and Visualize 2045 LRTP prepared by the Metropolitan Washington Council of

00131357

Governments, National Capital Region TPB for the Washington DC-MD-VA Area. EPA has determined that the conformity determinations for the 1997 8-hour ozone NAAQS, 2008 8-hour ozone NAAQS, and the 2015 8-hour ozone NAAQS for the Washington DC-MD-VA Area meet the requirements of the CAA and the applicable regulations promulgated at 40 CFR part 93 as long as FHWA determines that the TIP and plan demonstrate fiscal constraint.

00131358

Message

___

**From:** Mar, Jeanette (FHWA) [Jeanette.Mar@dot.gov]
**Sent:** 6/22/2020 4:54:06 PM
**To:** Caryn Brookman (Consultant) [CBrookman.consultant@mdot.maryland.gov]; Cogburn, Megan (FHWA) [megan.cogburn@dot.gov]; Parikh, Jitesh (FHWA) [Jitesh.Parikh@dot.gov]; Perez, Keilyn (FHWA) [Keilyn.Perez@dot.gov]
**CC:** Otto, Camille (FHWA) [camille.otto@dot.gov]; Karen Kahl [kkahl@rkk.com]; Kari Snyder [ksnyder3@mdot.maryland.gov]; Colleen Turner [cturner@mdot.maryland.gov]; Jeffrey Folden [JFolden1@mdot.maryland.gov]; Lisa Choplin [LChoplin@mdot.maryland.gov]; Eric.Beightel@wsp.com; Ho, Cecilia (FHWA) [Cecilia.Ho@dot.gov]
**Subject:** RE: Regional Air Quality Conformity- MLS

Caryn:

Based on the information provided, we agree that the project is included in the currently conforming plan and TIP and the requirements in 40 CFR 94.115 are met. Provided that the project's design concept and scope have not changed significantly from those that were described in the current conforming plan and TIP, then a new conformity determination on the plan is not required prior to the approval of the ROD.

Thanks!

*Jeanette*

Jeanette Mar
Environmental Program Manager
FHWA - Maryland Division
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1520
Baltimore, MD 21201
phone (410) 779-7152
fax (410) 962-4054

___

**From:** Caryn Brookman (Consultant) <CBrookman.consultant@mdot.maryland.gov>
**Sent:** Tuesday, June 16, 2020 12:30 PM
**To:** Cogburn, Megan (FHWA) <megan.cogburn@dot.gov>; Mar, Jeanette (FHWA) <Jeanette.Mar@dot.gov>; Parikh, Jitesh (FHWA) <Jitesh.Parikh@dot.gov>; Perez, Keilyn (FHWA) <Keilyn.Perez@dot.gov>
**Cc:** Otto, Camille (FHWA) <camille.otto@dot.gov>; Karen Kahl <kkahl@rkk.com>; Kari Snyder <ksnyder3@mdot.maryland.gov>; Colleen Turner <cturner@mdot.maryland.gov>; Jeffrey Folden <JFolden1@mdot.maryland.gov>; Lisa Choplin <LChoplin@mdot.maryland.gov>; Eric.Beightel@wsp.com
**Subject:** Regional Air Quality Conformity- MLS

___

CAUTION: This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon FHWA-

To summarize our discussion today, the regional air quality conformity determination for the Visualize 2045 plan *amendment* and FY 21-24 TIP were approved on May 27, 2020 (approvals attached). The TPB's FY 21-24 TIP was then adopted into and approved in MDOT's FY 19-22 STIP (attached). Note, the *initial* CLRP (Visualize 2045) and the 2019 TIP already included the I-495 & I-270 Traffic Relief Plan, including the Managed Lanes Study. The *initial and most recent* air quality conformity determination approvals included "construction of 4 managed lanes" on both I-495 and I-270.

The next full CLRP update is schedule for the end of 2022, and the start of that process is beginning now. Our plan is to include the preferred alternative for the full CLRP update by the end of the 2020 which aligns well with the current MLS NEPA schedule. If we were to do an off-cycle air quality conformity analysis, we would have to know the preferred alternative by September which is not in line with our current schedule. However, we don't see the need for the off cycle analysis considering the current CLRP and TIP and associated air quality conformity determination already include the full I-495 and I-270 Traffic Relief Plan as construction of four managed lanes along I-270 and I-495.

Please let us know if you agree that the approved air quality conformity determination for the current fiscally constrained elements (4 managed lanes on I-270 and 4 managed lanes on I-495) in both the CLRP and TIP will be sufficient to advance approval of the ROD for the MLS.

Thank you,

Caryn

Governor Hogan is committed to outstanding customer service. Tell us how we are doing. Click here.



Maryland now features 511 traveler information!
Call 511 or visit: www.md511.org

Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.



**MARYLAND DEPARTMENT
OF TRANSPORTATION**

Larry Hogan
Governor

Boyd K. Rutherford
Lt. Governor

Gregory Slater
Secretary

Office of the Secretary

September 28, 2020

The Honorable Susan C. Lee
Senate of Maryland
11 Bladen Street, Room 223
Annapolis MD 21041

The Honorable Ronald N. Young
Senate of Maryland
11 Bladen Street, Room 301
Annapolis MD 21041

Dear Senators Lee and Young:

Thank you for contacting me regarding the Draft Environmental Impact Statement (DEIS) for the
I-495 and I-270 Managed Lanes Study (MLS). I appreciate the opportunity to address your concerns.

The Northern section of I-270 from I-370 to I-70 is part of a separate, independent National
Environmental Policy Act (NEPA) study under the I-495 and I-270 Public-Private Partnership (P3)
Program. We recognize that improvements are needed in the Northern section of I-270 with or
without the improvements being considered under the MLS. The need for these improvements has
been studied in the past, and previous analyses can be found in the I-270/US 15 Multi-Modal
Corridor Study.

I have attached the figures that show the projected travel time in the general-purpose lanes in 2040
along I-270 between Frederick and Virginia during the morning and evening peak hours for each
build alternative under the MLS. The results of the build alternatives assume that no additional
improvements are made in the Northern section of I-270 in the year 2040 due to the separate study,
and therefore may be underestimating the overall future benefits on I-270.

The MLS DEIS shows that travel time on I-270 Northbound between I-495 and I-370 in the general-
purpose lanes is lowest in the no-build condition in the evening peak. This is due to travelers being
stuck in significant congestion on I-495 and the local system, limiting the number of vehicles on
I-270 Northbound in the evening peak period. The proposed improvements on I-495 and I-270 will
provide congestion relief for users of the overall system by moving more people on I-270
Northbound, resulting in reduced delays on the local system, and reducing travel times for the most
common trips, such as from the American Legion Bridge to I-370. A person using the general-
purpose lanes from the American Legion Bridge to I-370 in the 2040 evening peak will save up to 14
minutes with speeds up to 42 miles per hour (mph). Without the improvements to both I-495 and
I-270, the speed of the same trip would be 24 mph, demonstrating the need for improvements south
of I-370.

00135084

The Honorable Susan C. Lee
The Honorable Ronald N. Young
Page Two

Thank you again for contacting me. If you have any additional questions or concerns, please feel free to contact Lisa B. Choplin, DBIA, MDOT State Highway Administration (MDOT SHA) I-495 and I-270 P3 Office Director, at 410-637-3320 or lchoplin@mdot.maryland.gov. Ms. Choplin will be happy to assist you. Of course, you may always contact me directly.

Sincerely,

Gregory Slater
Secretary

Attachment

cc:     Lisa B. Choplin, DBIA, Director, I-495 and I-270 P3 Office, MDOT SHA
        Tim Smith, P.E., Administrator, MDOT SHA

00135085



I-270 Northbound / I-495 Inner Loop - 2040 Travel Time - AM Peak

| Alternatives | Travel Time (min) |
|---|---|
| Free Flow | 33 |
| Alt 9M (GP) | 38 |
| Alt 13C (GP) | 39 |
| Alt 13B (GP) | 40 |
| Alt 10 (GP) | 38 |
| Alt 9 (GP) | 38 |
| Alt 8 (GP) | 40 |
| No Build | 38 |
| Existing | 37 |



I-270 Southbound / I-495 Outer Loop - 2040 Travel Time - AM Peak

| Alternatives | Travel Time (min) |
|---|---|
| Existing | 82 |
| No Build | 79 |
| Alt 8 (GP) | 76 |
| Alt 9 (GP) | 71 |
| Alt 10 (GP) | 81 |
| Alt 13B (GP) | 73 |
| Alt 13C (GP) | 86 |
| Alt 9M (GP) | 73 |
| Free Flow | 33 |

00135087







1319 F Street NW, Suite 300
Washington, DC 20004
www.jillgrantlaw.com

Jill Grant & Associates LLC
Attorneys at Law

Phone: 202-821-1950
Fax:    202-459-9558

October 15, 2020

Ms. Lisa B. Choplin, Director
Maryland Department of Transportation
State Highway Administration
I-495 & I-270 P3 Office
707 North Calvert Street
Mail Stop P-601
Baltimore, MD 21202
495-270-P3@sha.state.md.us

**Re:    I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data**

Dear Ms. Choplin,

MDOT's October 14, 2020 response to our request for data underlying the DEIS's traffic analysis is unlawful. **We request that MDOT immediately provide the requested traffic spreadsheets and model files underlying its conclusions in the DEIS, no later than Monday, October 19.**

First, the underlying data requested is required to be disclosed publicly with the DEIS. 40 C.F.R. § 1500.1(b) (2019) ("NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken. The information must be of high quality. Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA"); *id.* § 1502.21 (2019) (underlying data may be incorporated by reference only if "it is reasonably available for inspection by potentially interested persons within the time allowed for comment"); *WildEarth Guardians v. Mont. Snowmobile Ass'n*, 790 F.3d 920, 925 (9th Cir. 2015) ("To fulfill NEPA's public disclosure requirements, the agency must provide to the public 'the underlying environmental data' from which the [agency] develops its opinions and arrives at its decisions."). MDOT and FHWA's failure to provide this data violates NEPA.

Second, the request for this data was not a request under Maryland's Public Information Act (PIA); it was a request for data files that were required to be disclosed under NEPA. It is not subject to Maryland's PIA procedures and MDOT's treatment of it as such only serves to delay the disclosure and our ability to review it in time to submit comments.

Third, to the extent MDOT's October 14 letter claims that the data requested is publicly available in Appendix C of the DEIS, that is incorrect. Final numbers presented in tables of a PDF cannot be substituted for the actual underlying spreadsheets and model files used to create those tables,

October 15, 2020
Page 2 of 3

which include formulas, calculations, and numbers that are not rounded. To reach their conclusions in the DEIS, the Agencies were not limited merely to numbers in tables of a PDF and they cannot limit the public to that either.

Fourth, it is outrageous that MDOT will not provide these data files unless local non-profit organizations pay $6,294.51. Providing the requested files simply requires copying and pasting computer folders to a Dropbox or other cloud-based folder and emailing the link. In fact, Smart Mobility has requested this same type of data many times for other highway DEISs and has always been promptly provided it without charge. A non-exhaustive list includes:

1. Florida Department of Transportation District 1 – Collier County MPO RTP Update

2. Colorado Department of Transportation – I-70 East EIS

3. Berkeley Charleston Dorchester Council of Governments (South Carolina) – RTP Update and I-526 Extension

4. New York Department of Transportation – Hunts Point Interstate Access Improvement Project DEIS

5. Southern California Association of Governments – High Dessert Corridor DEIR

6. Arkansas Department of Transportation – I-30 Planning and Linkages Study

7. Utah Department of Transportation – West Davis Corridor DEIS

8. Texas Department of Transportation – RTP Update and South Mopac modeling

9. Charlottesville/Albemarle Metropolitan Planning Organization (Virginia) – Charlottesville Bypass

The requested files should be organized and readily available from the person or entity that undertook the traffic analysis. Providing these files does not take more than two hours, let alone cost an additional $6,294.51. Moreover, even if this request was not based on NEPA, the requested files should have been provided at no charge pursuant to a fee waiver under Md. Code Ann., GP § 4-206(e) and Md. Code Regs. 11.01.13.13(A)(7); the non-profit organizations' ability to pay fees is constrained and the requested records are in the public interest and will enable the public to meaningfully comment on the DEIS's traffic conclusions. Consistent with its actions throughout this NEPA process, and unlike other NEPA processes throughout the country, MDOT is going above and beyond to withhold and hide relevant and needed information from public review.

By not promptly providing the requested data files, which are being requested in the standard format and should take a short time to assemble, MDOT is preventing the public from meaningfully reviewing and commenting on the traffic analysis in the DEIS. **We request that MDOT immediately provide the requested traffic spreadsheets and model files underlying its decisions in the DEIS, no later than Monday, October 19.** Because of the Agencies' unlawful delay in providing this data, we request that the comment period be extended by at least

October 15, 2020
Page 3 of 3

15 days, so that the public has a reasonable opportunity to review and comment on the DEIS's traffic analysis and conclusions.

Sincerely,

Ian Fisher
Jill Grant & Associates
1319 F Street NW, Suite 300
Washington, DC 20004
202-821-1948
ifisher@jillgrantlaw.com

cc:     Jitesh Parikh, FHWA
        Jeanette Mar, FHWA
        Timothy Perry, MDOT
        Lindsey Mendelson, Sierra Club Maryland Chapter
        Paula Posas, Sierra Club Maryland Chapter
        Norm Marshall, Smart Mobility

**MDOT**
**MARYLAND DEPARTMENT**
**OF TRANSPORTATION**

**Larry Hogan**
Governor

**Boyd K. Rutherford**
Lt. Governor

**Gregory Slater**
Secretary

October 14, 2020

Mr. Ian Fisher
Associate Attorney
Jill Grant & Associates, LLC
1319 F Street NW, Suite 300
Washington DC  20004-1140

Dear Mr. Fisher:

The Maryland Department of Transportation (MDOT) is in receipt of your request (826061) pursuant to the Maryland Public Information Act, General Provisions Article (GP), § 4-101 *et seq.,* Annotated Code of Maryland.  Specifically, you requested:

"1) MWCOG model loaded traffic assignment output files for each of the 4 modeled periods (AM peak, midday, PM-Peak and night) for the:
* base year, and
* future year for all alternatives shown in DEIS Table 2-3 (1, 5, 8, 9, 9M, 10, 13B and 13C)
2) The spreadsheets containing the traffic data in DEIS Appendix C Traffic Analysis Technical Report Figures 2-10, 2-11, 2-12, 2-13. 2-14 and 2-15.
3) The spreadsheets containing the speed data in DEIS Appendix C Traffic Analysis Technical Report Figures 2-20, 2-21, 2-22, 2-23, 2-24 and 2-25."

Documents responsive to your requests are publicly available.  In particular to item #2 in your request, the traffic data spreadsheet for Figures 2-12 through 2-15 are available at the link below which was posted with the publication of the DEIS and Technical Reports.

https://495-270-p3.com/wp-content/uploads/2020/07/APP-C_MLS_Traffic-Tech-Report-Appendices.pdf

For the remainder of your request, GP § 4-206 authorizes MDOT to charge for time incurred to prepare, search, and review documents after the first two hours of work.  The estimated cost is $6,294.51.  We are happy to work with you to narrow the scope of your request in an effort to reduce the cost.  If you identify and authorize a more targeted search, we would be happy to provide you with a revised fee estimate. Should you wish to continue with the current request scope, please forward a check made payable to the Maryland Department of Transportation to:

Mr. Timothy Perry
MDOT PIA Manager
Maryland Department of Transportation
7021 Corporate Center Drive
Hanover MD  21076

00135999

Mr. Ian Fisher
Page Two

Please be advised that we will not begin working on your request until and unless we receive payment. If, after we have completed the work, the actual cost differs from this estimate, you will either be required to pay the balance prior to receiving the records or you will be issued a refund. If we do not receive payment from you by October 30, 2020, we will consider the matter closed. Of course, you may reinitiate a new request at any time.

When and if we receive payment, we will contact you to provide an expected date of completion. If we require additional time, we will contact you.

Payment does not guarantee the full release of the records you seek. It is possible that records or information within the records requested may be redacted or exempt from disclosure under State and/or federal laws and/or regulations.

Pursuant to GP § 4-1A-01, *et seq.*, you may dispute a fee considered unreasonable and in excess of $350 to the Public Information Act Compliance Board. You have the option to refer any concerns about this determination to the Public Access Ombudsman pursuant to GP § 4-1B-01 *et seq.* Pursuant to GP § 4-362, you are entitled to seek judicial review of this decision.

For efficiency reasons and to keep operational costs as low as possible, we encourage all requesters to submit their PIA requests through the MDOT online form, which can be found at www.mdot.maryland.gov. Click on the About tab at the top and then Public Information Act. You will find all PIA Representative contact information and other helpful information.

If you have any questions, you may contact me at 410-865-1237 or tperry1@mdot.maryland.gov. I will be happy to assist you.

Sincerely,

Timothy R. Perry
MDOT PIA Manager

Message

| | |
|---|---|
| From: | Perez, Keilyn (FHWA) [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A0826722F29748F3B1B5ECB970889E46-PEREZ, KEIL] |
| Sent: | 10/21/2020 12:33:45 PM |
| To: | Parikh, Jitesh (FHWA) [Jitesh.Parikh@dot.gov] |
| Subject: | RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data |

Jitesh,

Please feel free to edit the sentences below.

*FHWA reviewed the traffic analysis and information included in the DEIS and appendices. FHWA agreed with the analysis as presented and did not need to review this additional traffic information. Therefore, it is not part of the record. Please note that traffic data related to Figures 2-12 through 2-15 is provided in the DEIS, Appendix C, Appendix A pages 1-51.*

Thanks,

*Keilyn Perez*

Senior Area Engineer *[District 3, IAPA & LPA Coordinator]*
FHWA, Maryland Division
Office: (410) 779-7141

---

**From:** Parikh, Jitesh (FHWA)
**Sent:** Tuesday, October 20, 2020 10:39 AM
**To:** Perez, Keilyn (FHWA) <Keilyn.Perez@dot.gov>
**Subject:** FW: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

Hi Keilyn,
Would you help me in preparing response to Sharon? Thank you.
Jitesh

---

**From:** Vaughn-Fair, Sharon (FHWA) <Sharon.Vaughn-Fair@dot.gov>
**Sent:** Tuesday, October 20, 2020 9:30 AM
**To:** Parikh, Jitesh (FHWA) <Jitesh.Parikh@dot.gov>
**Subject:** RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

Is this information that would usually come to FHWA during a NEPA study or is it customary for FHWA to rely on the information in the DEIS?

Sharon Vaughn-Fair
Assistant Chief Counsel
Federal Highway Administration
Office of the Chief Counsel
Field Legal Services North
31 Hopkins Plaza, Suite 840
Baltimore, Md 21201
Phone: 410-962-2544
Mobile: 410-980-7621

**From:** Parikh, Jitesh (FHWA)
**Sent:** Tuesday, October 20, 2020 8:53 AM
**To:** Vaughn-Fair, Sharon (FHWA) <Sharon.Vaughn-Fair@dot.gov>
**Cc:** Cogburn, Megan (FHWA) <megan.cogburn@dot.gov>; Otto, Camille (FHWA) <camille.otto@dot.gov>; Murrill, Gregory (FHWA) <Gregory.Murrill@dot.gov>; Wade, Bill (FHWA) <Bill.Wade@dot.gov>; Mar, Jeanette (FHWA) <Jeanette.Mar@dot.gov>; Perez, Keilyn (FHWA) <Keilyn.Perez@dot.gov>; Mobley, Diane (FHWA) <Diane.Mobley@dot.gov>; Thomas, Lavinia (FHWA) <Lavinia.Thomas@dot.gov>
**Subject:** FW: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

Good Morning Sharon,

Mr. Fisher followed up on his October 15 email to us with another email. He has sent an identical email to MDOT SHA with a copy to us. We will discuss it tomorrow at our meeting.

Thank you.

Jitesh

**From:** Ian Fisher <ifisher@jillgrantlaw.com>
**Sent:** Tuesday, October 20, 2020 8:45 AM
**To:** Parikh, Jitesh (FHWA) <Jitesh.Parikh@dot.gov>; Mar, Jeanette (FHWA) <Jeanette.Mar@dot.gov>
**Cc:** Lisa Choplin <LChoplin@mdot.maryland.gov>; 495-270-P3@sha.state.md.us; MLS-NEPA-P3@mdot.maryland.gov; nmarshall@smartmobility.com; Lindsey Mendelson <lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen <mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

> **CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Dear Mr. Parikh,
I'm writing to follow up on our October 1, 2020, request for underlying traffic data and October 15, 2020, follow up. We reasonably requested a response by October 19, 2020, but still have not received the data. We request this data immediately and because of the Agencies' delay in providing it, we request that FHWA extend the comment period to allow for meaningful review of and comment on the files once provided. Thank you,
Ian Fisher

**From:** Ian Fisher
**Sent:** Thursday, October 15, 2020 12:16 PM
**To:** 'Parikh, Jitesh (FHWA)' <Jitesh.Parikh@dot.gov>; 'jeanette.mar@dot.gov' <jeanette.mar@dot.gov>
**Cc:** Lisa Choplin <LChoplin@mdot.maryland.gov>; 495-270-P3@sha.state.md.us; MLS-NEPA-P3@mdot.maryland.gov; nmarshall@smartmobility.com; Lindsey Mendelson <lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen <mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

Dear Mr. Parikh,

MDOT SHA did not provide the underlying data files requested below on October 1, 2020. As explained in the attached letter that was just sent to MDOT SHA, withholding the requested data files violates NEPA and precludes meaningful public comment on the DEIS.

FHWA, as the lead agency, is responsible for compliance with NEPA and has an independent obligation to provide the requested files. *See* 40 C.F.R. § 1501.5; §771.109(c). MDOT SHA's unlawful decision to withhold data underlying the DEIS's traffic analysis and conclusions does not change FHWA's obligation to provide this data.

**We request that FHWA provide the requested data files by Monday, October 19, 2020. Further, because the Agencies delay in providing this data, we request that FHWA extend the comment period by 15 days to allow for meaningful review of the files.** Thank you,

Ian Fisher

---

**From:** Parikh, Jitesh (FHWA) <Jitesh.Parikh@dot.gov>
**Sent:** Wednesday, October 14, 2020 9:39 AM
**To:** Ian Fisher <ifisher@jillgrantlaw.com>; Lisa Choplin <LChoplin@mdot.maryland.gov>; 495-270-P3@sha.state.md.us; MLS-NEPA-P3@mdot.maryland.gov
**Cc:** nmarshall@smartmobility.com; Lindsey Mendelson <lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen <mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

Good Morning Mr. Fisher,

I want to let you know that MDOT SHA will be responding to you directly regarding your inquiry.  Thank you.

Jitesh

---

**From:** Ian Fisher <ifisher@jillgrantlaw.com>
**Sent:** Friday, October 09, 2020 1:10 PM
**To:** Parikh, Jitesh (FHWA) <Jitesh.Parikh@dot.gov>; Lisa Choplin <LChoplin@mdot.maryland.gov>; 495-270-P3@sha.state.md.us; MLS-NEPA-P3@mdot.maryland.gov
**Cc:** nmarshall@smartmobility.com; Lindsey Mendelson <lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen <mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

> **CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Dear Ms. Choplin and Mr. Parikh,
I am writing to follow up on the below request which I don't believe has gotten a response. This information is needed to meaningfully comment on the DEIS. Because of the upcoming deadline to review the DEIS and submit comments, we request this information by Tuesday, October 13. Thank you,
Ian

---

**From:** Ian Fisher
**Sent:** Thursday, October 1, 2020 6:09 PM
**To:** 'Parikh, Jitesh (FHWA)' <Jitesh.Parikh@dot.gov>; Lisa Choplin <LChoplin@mdot.maryland.gov>; '495-270-P3@sha.state.md.us' <495-270-P3@sha.state.md.us>; 'MLS-NEPA-P3@mdot.maryland.gov' <MLS-NEPA-P3@mdot.maryland.gov>
**Cc:** 'nmarshall@smartmobility.com' <nmarshall@smartmobility.com>; 'Lindsey Mendelson' <lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen <mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

Dear Ms. Choplin and Mr. Parikh,

Re: the I-495 & I-270 Managed Lanes Study DEIS, we request:

1) MWCOG model loaded traffic assignment output files for each of the 4 modeled periods (AM peak, midday, PM-Peak and night) for the:
 * base year, and
 * future year for all alternatives shown in DEIS Table 2-3 (1, 5, 8, 9, 9M, 10, 13B and 13C)

2) The spreadsheets containing the traffic data in DEIS Appendix C Traffic Analysis Technical Report Figures 2-10, 2-11, 2-12, 2-13. 2-14 and 2-15.

3) The spreadsheets containing the speed data in DEIS Appendix C Traffic Analysis Technical Report Figures 2-20, 2-21, 2-22, 2-23, 2-24 and 2-25.


If you have any technical questions about this request please contact our consultant:

--
Norm Marshall, President
Smart Mobility Inc.
794 Sawnee Bean Rd.
Thetford Center VT 05075
(New address effective 5/18/2020)

802-356-2969

Thank you,

Ian Fisher
Associate Attorney
Jill Grant & Associates, LLC
1319 F Street NW, Suite 300
Washington, DC 20004
Tel: 202-821-1948
Fax: 202-459-9558
ifisher@jillgrantlaw.com
www.jillgrantlaw.com



If this email concerns legal matters, this communication and any attachments are attorney-client privileged and confidential and intended for use only by the individual or entity named above as the intended recipient. If you are not the intended recipient, reading, distributing, or copying this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender at ifisher@jillgrantlaw.com and delete this email and any attachments. Thank you.

00136155

Message

| | |
|---|---|
| **From**: | Parikh, Jitesh (FHWA) [Jitesh.Parikh@dot.gov] |
| **Sent**: | 10/23/2020 8:35:29 AM |
| **To**: | Ian Fisher [ifisher@jillgrantlaw.com] |
| **CC**: | Lisa Choplin [LChoplin@mdot.maryland.gov]; 495-270-P3@sha.state.md.us; MLS-NEPA-P3@mdot.maryland.gov; nmarshall@smartmobility.com; Lindsey Mendelson [lindsey.mendelson@mdsierra.org]; Paula Posas [paula.posas@mdsierra.org]; Mary Clemmensen [mclemmensen@jillgrantlaw.com]; Brock Miller [bmiller@jillgrantlaw.com]; Mar, Jeanette (FHWA) [Jeanette.Mar@dot.gov] |
| **Subject**: | RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data |

Dear Mr. Fisher,

Thank you for your October 20, 2020 email. We do not have the data files that you are requesting in FHWA's record for the I-495 & I-270 Managed Lane Study. Our subject matter experts reviewed the traffic analysis and information included in the DEIS and appendices, and FHWA agreed with the analysis as presented.

Please note that the traffic data related to Figures 2-12 through 2-15 are provided in the DEIS Appendix C, Appendix A pages 1-51.

FHWA and MDOT SHA has already extended the comment period until November 9, 2020. Thank you.

Jitesh Parikh

**From:** Ian Fisher <ifisher@jillgrantlaw.com>
**Sent:** Tuesday, October 20, 2020 8:45 AM
**To:** Parikh, Jitesh (FHWA) <Jitesh.Parikh@dot.gov>; Mar, Jeanette (FHWA) <Jeanette.Mar@dot.gov>
**Cc:** Lisa Choplin <LChoplin@mdot.maryland.gov>; 495-270-P3@sha.state.md.us; MLS-NEPA-P3@mdot.maryland.gov; nmarshall@smartmobility.com; Lindsey Mendelson <lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen <mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

> **CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Dear Mr. Parikh,
I'm writing to follow up on our October 1, 2020, request for underlying traffic data and October 15, 2020, follow up. We reasonably requested a response by October 19, 2020, but still have not received the data. We request this data immediately and because of the Agencies' delay in providing it, we request that FHWA extend the comment period to allow for meaningful review of and comment on the files once provided. Thank you,
Ian Fisher

**From:** Ian Fisher
**Sent:** Thursday, October 15, 2020 12:16 PM
**To:** 'Parikh, Jitesh (FHWA)' <Jitesh.Parikh@dot.gov>; 'jeanette.mar@dot.gov' <jeanette.mar@dot.gov>
**Cc:** Lisa Choplin <LChoplin@mdot.maryland.gov>; 495-270-P3@sha.state.md.us; MLS-NEPA-P3@mdot.maryland.gov; nmarshall@smartmobility.com; Lindsey Mendelson <lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen <mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

Dear Mr. Parikh,

MDOT SHA did not provide the underlying data files requested below on October 1, 2020. As explained in the attached letter that was just sent to MDOT SHA, withholding the requested data files violates NEPA and precludes meaningful public comment on the DEIS.

FHWA, as the lead agency, is responsible for compliance with NEPA and has an independent obligation to provide the requested files. *See* 40 C.F.R. § 1501.5; §771.109(c). MDOT SHA's unlawful decision to withhold data underlying the DEIS's traffic analysis and conclusions does not change FHWA's obligation to provide this data.

**We request that FHWA provide the requested data files by Monday, October 19, 2020. Further, because the Agencies delay in providing this data, we request that FHWA extend the comment period by 15 days to allow for meaningful review of the files.** Thank you,

Ian Fisher

**From:** Parikh, Jitesh (FHWA) <Jitesh.Parikh@dot.gov>
**Sent:** Wednesday, October 14, 2020 9:39 AM
**To:** Ian Fisher <ifisher@jillgrantlaw.com>; Lisa Choplin <LChoplin@mdot.maryland.gov>; 495-270-P3@sha.state.md.us; MLS-NEPA-P3@mdot.maryland.gov
**Cc:** nmarshall@smartmobility.com; Lindsey Mendelson <lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen <mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

Good Morning Mr. Fisher,

I want to let you know that MDOT SHA will be responding to you directly regarding your inquiry. Thank you.

Jitesh

**From:** Ian Fisher <ifisher@jillgrantlaw.com>
**Sent:** Friday, October 09, 2020 1:10 PM
**To:** Parikh, Jitesh (FHWA) <Jitesh.Parikh@dot.gov>; Lisa Choplin <LChoplin@mdot.maryland.gov>; 495-270-P3@sha.state.md.us; MLS-NEPA-P3@mdot.maryland.gov
**Cc:** nmarshall@smartmobility.com; Lindsey Mendelson <lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen <mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** RE: I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

CAUTION: This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Dear Ms. Choplin and Mr. Parikh,
I am writing to follow up on the below request which I don't believe has gotten a response. This information is needed to meaningfully comment on the DEIS. Because of the upcoming deadline to review the DEIS and submit comments, we request this information by Tuesday, October 13. Thank you,
Ian

**From:** Ian Fisher
**Sent:** Thursday, October 1, 2020 6:09 PM
**To:** 'Parikh, Jitesh (FHWA)' <Jitesh.Parikh@dot.gov>; Lisa Choplin <LChoplin@mdot.maryland.gov>; '495-270-

00136265

P3@sha.state.md.us' <495-270-P3@sha.state.md.us>; 'MLS-NEPA-P3@mdot.maryland.gov' <MLS-NEPA-P3@mdot.maryland.gov>
**Cc:** 'nmarshall@smartmobility.com' <nmarshall@smartmobility.com>; 'Lindsey Mendelson'
<lindsey.mendelson@mdsierra.org>; Paula Posas <paula.posas@mdsierra.org>; Mary Clemmensen
<mclemmensen@jillgrantlaw.com>; Brock Miller <bmiller@jillgrantlaw.com>
**Subject:** I-495 & I-270 Managed Lanes Study DEIS Traffic Files/Data

Dear Ms. Choplin and Mr. Parikh,

Re: the I-495 & I-270 Managed Lanes Study DEIS, we request:

1) MWCOG model loaded traffic assignment output files for each of the 4 modeled periods (AM peak, midday, PM-Peak and night) for the:
* base year, and
* future year for all alternatives shown in DEIS Table 2-3 (1, 5, 8, 9, 9M, 10, 13B and 13C)

2) The spreadsheets containing the traffic data in DEIS Appendix C Traffic Analysis Technical Report Figures 2-10, 2-11, 2-12, 2-13. 2-14 and 2-15.

3) The spreadsheets containing the speed data in DEIS Appendix C Traffic Analysis Technical Report Figures 2-20, 2-21, 2-22, 2-23, 2-24 and 2-25.

If you have any technical questions about this request please contact our consultant:

--
Norm Marshall, President
Smart Mobility Inc.
794 Sawnee Bean Rd.
Thetford Center VT 05075
(New address effective 5/18/2020)

802-356-2969

Thank you,

Ian Fisher
Associate Attorney
Jill Grant & Associates, LLC
1319 F Street NW, Suite 300
Washington, DC 20004
Tel: 202-821-1948
Fax: 202-459-9558
ifisher@jillgrantlaw.com
www.jillgrantlaw.com

If this email concerns legal matters, this communication and any attachments are attorney-client privileged and confidential and intended for use only by the individual or entity named above as the intended recipient. If you are not the intended recipient, reading, distributing, or copying this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender at ifisher@jillgrantlaw.com and delete this email and any attachments. Thank you.